Sandra DINSMORE, Victor Dinsmore, Carissa Dinsmore, by her natural parents, Victor and Sandra Dinsmore, and Bradley Tucker, by his natural parents, Tanya Tucker and Brian Dinsmore, Appellants–Plaintiffs,

v.

FLEETWOOD HOMES OF TENNESSEE, INC., Appellee–Defendant.

No. 49A02–0807–CV–615.

Court of Appeals of Indiana.

May 15, 2009.

Thomas W. Vander Luitgaren, Matthew M. Cree, Van Valer Law Firm, LLP, Greenwood, IN, Attorneys for Appellants.

Thomas J. Belcher, Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorneys for Appellee.

1. The complaint is not included in the Appendix. Fleetwood's brief states that the initial complaint sought property damages, and Sandra's reply does not challenge this statement.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Sandra Dinsmore ("Sandra") and intervening plaintiffs Victor Dinsmore, Carissa Dinsmore (by her natural parents, Victor and Sandra Dinsmore), and Bradley Tucker (by his natural parents Tanya Tucker and Brian Dinsmore) appeal (1) the trial court's order granting summary judgment to Fleetwood Homes of Tennessee, Inc. ("Fleetwood"); and (2) their motion to amend by interlineation Sandra's response to Fleetwood's motion for summary judgment.

We reverse.

### ISSUES

1. Whether the trial court erred by granting Fleetwood's motion for summary judgment.

2. Whether the trial court abused its discretion when it denied the motion to amend by interlineation.

### FACTS

We begin with the procedural facts. On May 23, 2003, Sandra filed her complaint against Fleetwood and Cohron's Manufactured Homes, Inc. ("Cohron").[1] On January 29, 2004, Sandra filed a motion to amend her complaint. On February 24, 2004, the above-named intervening plaintiffs filed a motion for permissive intervention, alleging that they suffered personal injuries that were caused by living in the defective mobile home which was "negligent[ly] manufacture[d]" by Fleetwood such that "defects caused toxic mold infestation in the mobile home" and it "became

Further, the order appealed only addresses the claims against Fleetwood; hence, Cohron is not a participant in this appeal.

unsuitable as a dwelling due to the presence of toxic mold." (App. 52). After conducting a hearing and over Fleetwood's objections to both motions, on June 9, 2004, the trial court granted Sandra's motion to file an amended complaint and intervening plaintiffs' motion to intervene.

Sandra's amended complaint of June 9, 2004, alleged that in May of 1999, she purchased a Fleetwood mobile home from Cohron; that she subsequently found it "not to be suitable ... and ... incapable of being used, with safety as a dwelling place because [it] contain[ed] latent defects"; and that the "defects caused toxic mold infestation in the mobile home" and rendered it "uninhabitable and totally worthless." (App. 44). Her amended complaint alleged property damage and personal injuries.

On May 30, 2007, Fleetwood filed its motion for summary judgment, with a memorandum and a document captioned "Materials in Support of Motion for Summary Judgment." (App. 74). Fleetwood "designate[d] and rel[ied] upon" the following: (a) four paragraphs of Sandra's amended complaint; (b) Fleetwood's attached owner's manual, depicting one-year/ five-year warranties for the home; and (c) an itemized series of specific page and line number citations to the attached depositions of Sandra and Victor.[2] Similarly, Fleetwood's memorandum referred to specific page and line number citations in the depositions to support its asserted undisputed facts.

The trial court granted Sandra and the intervening plaintiffs' motion for an enlargement of time to respond to July 24, 2007. On July 24, 2007, Sandra filed her response to Fleetwood's motion for summary judgment. In her responsive brief,

Sandra cited to portions of the depositions submitted with Fleetwood's motion. She argued that there were genuine issues of material facts as to Fleetwood's liability under Indiana's implied warranty of habitability and Indiana's new home construction warranty law.

On August 2, 2007, the trial court heard oral arguments. On August 10, intervening plaintiffs filed a motion seeking permission to amend by interlineation Sandra's response to Fleetwood's motion for summary judgment such that it would be considered a response of Sandra *and* intervening plaintiffs. On August 13, 2007, Fleetwood filed its objection. On October 8, 2007, the trial court conducted a hearing and heard oral arguments. Subsequently, on November 16, 2007, Fleetwood filed a post-hearing brief in support, and Sandra and intervening plaintiffs filed a response on November 29, 2007.

On February 14, 2008, the trial court issued its order. Therein, the trial court found that because only Sandra had responded "within the required time limit" to Fleetwood's motion for summary judgment, it was "without discretion to extend the time period for responding" to intervening plaintiffs. (App. 18–19). The trial court further held that "[n]otwithstanding the intervening [p]laintiffs' failure to respond," Fleetwood was still "entitled to summary judgment in its favor on both" Sandra's complaint "and the intervening [p]laintiffs' complaint." (App. 19).

On November 25, 2008, Sandra and intervening plaintiffs filed their appellants' brief. On December 23, 2008, Fleetwood filed its appellee brief *and* motion to strike material from appellants' brief. Fleetwood argues that numerous assertions in

---

**2.** Although Fleetwood attached both depositions, it expressly cited to only specific page/ line number portions thereof.

the appellants' statement of facts cite to deposition testimony that was not designated to the trial court; and that some deposition testimony cited does not support the facts as stated by the appellants' brief. Fleetwood has moved this court to strike the appellants' improper references in their brief's statement of facts and legal arguments.

On January 5, 2009, Sandra and intervening plaintiffs filed a motion for an extension of time to file a reply brief *and* to respond to Fleetwood's motion to strike. On January 9, 2009, this court issued an order granting them fifteen days to file their reply and response; and held that the motion to strike would be held in abeyance. On January 22, 2009, Sandra and intervening plaintiffs filed their reply; however, no response was filed to the motion to strike.

█ Before reaching the merits of the appeal, we must address Fleetwood's motion to strike. Sandra and intervening plaintiffs are appealing the trial court's order granting summary judgment to Fleetwood. Trial Rule 56(C) requires each party to a summary judgment motion to "*designate* to the court *all parts* of pleadings, designations, . . . and any other matters on which it relies for purposes of the motion." *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993) (emphasis in original). Thus, it is incumbent upon the party to specify to the trial court the designated evidence that supports its position on the motion. *Id.* Further, appellate review prohibits the reversal of "summary judgment orders on the ground there is a genuine issue of material fact unless the material facts and relevant evidence were *specifically designated* to the trial court." *Id.* (emphasis in original, and quoting Trial Rule 56(H)).

█ Although the Trial Rule "does not mandate either the form of designation,

*i.e.*, the degree of specificity required, or its placement, *i.e.*, the filing in which the designation is to be made," it does require "sufficient specificity to identify the relevant portions of a document," and "that the designation clearly identify listed materials as designated evidence in support of or opposition to the motion for summary judgment." *Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind.2008). Fleetwood's designation of evidence complies with the Rule—by providing "detailed specification, . . . supplying line numbers" with page numbers, which is the "preferred" designation. *Id.*

█ The trial court may consider only properly designated evidence when deciding Fleetwood's motion for summary judgment. *Rosi*, 615 N.E.2d at 434. Similarly, in our review, we may consider only the evidence that was properly designated to the trial court. *Id.* As Dean Harvey stated, "[E]ven if the material fact and its evidence is in the record of the case, it is not available for appellate review unless it was so designated to the trial court." William F. Harvey, Rules of Procedure, 3A Indiana Practice, § 56.18, p. 323 (2002). Upon review, we find that the evidentiary assertions in the appellants' brief that are noted in Fleetwood's motion to strike are not based on the evidence designated to the trial court. Therefore, we hereby grant Fleetwood's motion to strike those evidentiary assertions in the appellants' brief that depend on evidence that was not specifically designated to the trial court, and we will consider only those facts established by (a) Fleetwood's specifically designated evidence, and (b) the page and line number evidentiary designations in Sandra's brief in response to Fleetwood's motion for summary judgment.

The designated evidence established the following facts. In April of 1999, Sandra

purchased from Cohron a home manufactured by Fleetwood and received a copy of Fleetwood owner's manual—which included express one-year/five-year warranties. In May of 1999, Sandra had the home transported from Indianapolis to Greensburg, where it was installed by Cohron in a wooded area by a lake, and she began living in the home.

In June of 1999, Sandra complained to Cohron or Fleetwood that there was a leak in the vent of one bathroom, mold on the windowsill, and a malfunctioning closet door. A Cohron repairman responded and fixed the closet door, replaced the windowsill, and sealed around the bathroom vent's exhaust system on the roof. In July of 1999, Victor began living in the home with Sandra. In August of 1999, Sandra complained to Cohron again that the same bathroom vent was leaking water. Two Cohron repairmen came to the home and made additional repairs.

In January of 2000, Carissa was born to Sandra and Victor. In March of 2000, Sandra had the home moved to an Indianapolis location, and Sandra, Victor, and Carissa ceased living in it.[3] Thereafter, Sandra's son, Brian Dinsmore, his girlfriend/fiancee, Tanya Tucker, and their son Bradley Tucker moved into the home. At her deposition, when asked if Brian and Tanya paid "rent," Sandra answered, "Yes, yes, they paid the mortgage payment" and utilities. (App. 155, designated deposition testimony of Sandra).

After the August 1999 complaint and repairs by Cohron, Sandra raised no more complaints about the home until July of 2002, when she called Fleetwood and reported that "the house was growing mold all through it." (App. 134, designated deposition testimony of Sandra). Subsequently, in 2002 or 2003, Brian and Tanya moved out of the home.[4] Thirty days later, Sandra stopped making installment payments, and foreclosure proceedings ensued. On February 7, 2003, counsel for Sandra and Victor notified Fleetwood in writing of alleged defects in the home.

## DECISION

### 1. Motion for Summary Judgment

Summary judgment is "appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind.2003) (citing Ind. Trial Rule 56(C)). We apply "the same standard as the trial court when reviewing decisions of summary judgment." *Filip*, 879 N.E.2d at 1080. Therefore, we "must reverse summary judgment unless there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* "All facts and reasonable inferences from them are to be construed in favor of the nonmoving party." *Id.* Further, "evidence should be liberally construed in favor of the nonmovant 'to ensure that he is not improperly denied his day in court....'" *Id.* at 1082 (quoting *Rosi*, 615 N.E.2d at 434 n. 2). "Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial." *Greathouse v. Armstrong*, 616 N.E.2d 364, 366 (Ind. 1993).

3. The reasonable inference is that Carissa lived in the home with Sandra and Victor from her birth in January of 2000 until her parents moved in March of 2000.

4. The reasonable inference is that Bradley lived in the home with his parents from March of 2000 until they moved in 2002 or 2003.

In its memorandum in support of its motion for summary judgment, Fleetwood argued to the trial court that the undisputed facts established that Fleetwood was entitled to judgment as a matter of law because the terms of Fleetwood's express warranties precluded the plaintiffs' claims; and because there was no implied warranty of habitability after Sandra "turn[ed] the home into a rental" and she no longer "occup[ied] the new home as a residence." (App. 71). In response, Sandra argued to the trial court that there were genuine issues of material fact as to Fleetwood's liability under Indiana's common law implied warranty of habitability. Fleetwood concedes that the "only issue on [a]ppeal is the application of the common law implied warranty of habitability." Fleetwood's Br. at 14.

Our Supreme Court reviewed the development of Indiana's common law warranty of habitability in *Johnson v. Scandia Assocs.*, 717 N.E.2d 24 (Ind.1999). First, it noted that the case of *Theis v. Heuer*, 264 Ind. 1, 280 N.E.2d 300 (1972), overruled the doctrine of caveat emptor in the sale of a new house and held "that a warranty of fitness for habitation may be implied in a builder-vendor's sale of a new house to the first purchaser." *Johnson*, 717 N.E.2d at 27. Then, in the case of *Barnes v. Mac-Brown & Co., Inc.*, 264 Ind. 227, 342 N.E.2d 619 (Ind.1976), the court "extended the protection of the implied warranty to subsequent purchase[er]s of the house, but limited its scope to latent or hidden defects." *Id.* (citing *Barnes*, 342 N.E.2d at 621). Further, *Barnes* held that "a plaintiff must prove that the defect's causation originated in the builder-vendor," and "the standard of proof is reasonableness in light of the circumstances." *Id.* (citing *Barnes*, 342 N.E.2d at 621). Subsequently, in the case of *Wagner Constr. Co. v. Noonan*, 403 N.E.2d 1144 (Ind.Ct.App.1980), we "added the idea of notice," requiring that the builder-vendor be given "notice of the alleged breach of warranty and opportunity to cure the defect." *Id.* (citing *Wagner Constr.*, 403 N.E.2d at 1150).

■ More recently, we have stated that the implied warranty of habitability is a warranty that the home will be free from defects that substantially impair the use and enjoyment of the home. *Russo v. Southern Developers, Inc.*, 868 N.E.2d 46, 48 (Ind.Ct.App.2007); *Smith v. Miller Builders, Inc.*, 741 N.E.2d 731, 740 (Ind. Ct.App.2000); *R.N. Thompson & Assocs. v. Wickes Lumber Co.*, 687 N.E.2d 617, 620 (Ind.Ct.App.1997), *trans. denied*. A claim for breach of the implied warranty of habitability is subject to a six-year statute of limitations, with the claim accruing and the statute beginning to run "when the injured party knows or, in the exercise of ordinary diligence, could have known, that he or she had sustained an injury." *Russo*, 868 N.E.2d at 48 (citing Ind.Code § 34–11–2–7, and quoting *Habig v. Bruning*, 613 N.E.2d 61, 64 (Ind.Ct.App.1993), *trans. denied*).

■ Fleetwood suggests that Indiana's common law warranty of habitability may not "appl[y] to manufactured mobile homes." Fleetwood's Br. at 15. In *Barnes*, 342 N.E.2d at 620, our Supreme Court noted that in *Theis*, 264 Ind. 1, 280 N.E.2d 300, it had "abolished caveat emptor between a builder-vendor and a first purchaser of a dwelling house and found that an implied warranty of fitness for habitation exists between those parties." *Barnes* stated that although "the *manufacturer* of a home must be accorded reasonable freedom of protection," limited liability under the warranty of habitability extended to a subsequent purchaser of the home. 342 N.E.2d at 621 (emphasis added). Specifically, liability was "limited to latent defects, not discoverable by a subsequent purchaser's reasonable inspection,

manifesting themselves after the purchase." 342 N.E.2d at 621. The homes in both *Theis* and *Barnes* were "site-built" homes, as Fleetwood labels the alternative to a "Fleetwood manufactured home." (App. 94, designated Fleetwood owner's manual [5]). Yet, our Supreme Court used the term "manufacturer" in *Barnes*—supporting the reasonable inference that for the application of the warranty of habitability as to a home, there is no distinction between a site-built home and a manufactured home. Further, Fleetwood's own designated evidence indicated that a Fleetwood manufactured home was comparable to a site-built home. *Id.*

Fleetwood appears to argue that even if Indiana's warranty of habitability were to apply to the home bought by Sandra, Fleetwood's warranty "is only applicable during the time frame that the initial home buyer occupies the unit as a resident." Fleetwood's Br. at 18. Fleetwood's only authority in that regard is Indiana's new home construction warranty statute—which provides a mechanism by which the builder of a new home may *disclaim* the implied warranty of habitability. However, pursuant to Indiana Code section 32–27–2–9, the legislature has "provided specific steps that a builder must take in order to disclaim implied warranties, such as the warranty of habitability." *McKibben Const., Inc. v. Longshore,* 788 N.E.2d 452, 460 (Ind.Ct.App.2003). Fleetwood has not argued nor has it designated evidence to establish that it had properly disclaimed "all implied warranties" as provided by the statute.[6] Therefore, this argument fails.

5.  Fleetwood's owner's manual begins by congratulating Sandra on "cho[osing] a Fleetwood home as [her] new residence" and describes Fleetwood as "one of the nation's largest producers of quality homes, with over one million homes produced to date." (App. 82).

6.  The statutory provision is as follows:

    (a) A builder may disclaim all implied warranties only if all of the following conditions are met:
        (1) The warranties defined in this chapter are expressly provided for in the written contract between a builder and an initial home buyer of a new home.
        (2) The performance of the warranty obligations is backed by an insurance policy in an amount at least equal to the purchase price of the new home.
        (3) The builder carries completed operations products liability insurance covering the builder's liability for reasonably foreseeable consequential damages arising from a defect covered by the warranties provided by the builder.
    (b) The disclaimer must be printed in a minimum size of 10 point boldface type setting forth that the statutory warranties of this chapter are in lieu of the implied warranties that have been disclaimed by the builder, and

the initial home buyer must affirmatively acknowledge by complete signature that the home buyer has read, understands, and voluntarily agrees to the disclaimer. Additionally, the initial home buyer must acknowledge the disclaim of implied warranties by signing, at the time of execution of the contract, a separate one (1) page notice, attached to the contract, that includes and begins with the following language:
"NOTICE OF WAIVER OF IMPLIED WARRANTIES
    I recognize that by accepting the express warranties and the insurance covering these warranties for the periods of time provided in this contract, I am giving up the right to any claims for implied warranties, which may be greater than the express warranties. Implied warranties are unwritten warranties relating to the reasonable expectations of a homeowner with regard to the construction of the homeowner's home, as those reasonable expectations are defined by the courts on a case by case basis."
    (c) If there is a default of either:
        (1) the insurance for the performance of the warranty obligations; or
        (2) the completed operations products liability insurance,
the disclaimer by the builder is void from and after the default.

■ The undisputed facts do not establish that Fleetwood is entitled to judgment as a matter of law on the plaintiffs' claims under Indiana's common law warranty of habitability, and Fleetwood's express warranties do not supercede Indiana's implied warranty of habitability because Fleetwood did not follow the builder's statutory disclaimer procedure. Moreover, numerous issues of material fact remain—given that the designated evidence establishes that Sandra bought a new home built by Fleetwood; Sandra, Victor, Carissa, and Bradley lived in the home; there were problems with water leaking into the home; slightly three years after purchasing the new home, Sandra reported to Fleetwood that "the house was growing mold all through it," (App. 134); less than four years after the purchase, Fleetwood was notified in writing of alleged defects in the home; and mortgage payments made by Brian Dinsmore (intervening plaintiff Bradley's father) may make him a subsequent purchaser of the home. These facts, which support conflicting inferences, must be considered in light of the plaintiffs' complaints alleging that latent defects in the home caused the growth of toxic mold, which rendered it uninhabitable and caused plaintiffs to suffer personal injuries. Finally, we note that Fleetwood has conceded that "[t]he source of the mold in the home is in dispute among the parties and the experts...." (App. 68). Consequently, based on Fleetwood's arguments and the properly designated evidence, we conclude that summary judgment was improvidently granted.

### 2. *Motion to Amend*

Sandra and intervening plaintiffs also argue that the trial court abused its discretion when it ruled that it could not grant the motion to amend by interlineation the response filed by Sandra to Fleetwood's motion for summary judgment and "went on to find that since Intervening Plaintiffs did not respond by setting forth specific facts showing that there is a genuine issue for trial, summary judgment against them was required...." Appellants' Br. at 29. Fleetwood argues in response that the trial court's action was not an abuse of discretion.

As noted above, summary judgment is "appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bushong*, 790 N.E.2d at 473. The party moving for summary judgment "bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law." *Knowledge, A–Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411, 419 (Ind.Ct.App.2006), *trans. denied* (citing *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 974 (Ind.2005)). "If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion." *Id.*

The plaintiffs' complaints raise claims based on Indiana's common law warranty of habitability. Fleetwood's motion for summary judgment and designated evidence did not establish that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law in that regard. Therefore, summary judgment to Fleetwood is precluded. Accordingly, the issue of intervening plaintiffs' response to the summary judgment is moot.

Reversed.

BAILEY, J., and ROBB, J., concur.