# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**DAVID P. MURPHY**
David P. Murphy & Associates, P.C.
Greenfield, Indiana

ATTORNEY FOR APPELLEES:

**ROBERT S. O'DELL**
O'Dell & Associates, P.C.
Carmel, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER GROCE and TRACEY GROCE, Husband and Wife, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 48A02-1208-CT-703 |
| AMERICAN FAMILY INSURANCE COMPANY and MICHAEL A. MEEK, | ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-0911-CT-967

**March 6, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Christopher Groce and Tracey Groce filed a complaint for damages against American Family Mutual Insurance Company ("American Family") and Michael Meek alleging negligence and breach of contract. American Family and Meek moved for summary judgment, which the trial court granted following a hearing. The Groces appeal and present a single dispositive issue, namely, whether their claims are barred by the applicable statute of limitations.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1997, the Groces purchased a residence in Henry County for $47,500. The Groces procured homeowner's insurance with a policy limit of $50,000 from Kevin Michaels, an insurance agent with American Family. In August 2003, Meek replaced Michaels as the Groces' insurance agent with American Family. Also in August 2003, Tracey advised Meek of the amount of the Groces' mortgage on the residence, and Meek obtained a new American Family homeowner's policy for the Groces with policy limits of $121,900.

In November 2003, the Groces advised Meek that they had added a "24x32 story frame addition" to the house, and Meek provided them with a quote to increase the dwelling coverage to $140,000. Appellants' App. at 7. In July or August 2005, in conjunction with a refinance of their mortgage, the Groces' mortgage company asked Meek to increase the policy limits on the Groces' policy to $176,000. Thereafter, the

2

policy limits were ultimately increased to $200,900 pursuant to "inflation protection coverage" under the policy. Appellants' App. at 328.

On October 21, 2007, a fire destroyed the Groces' residence. Marc Patterson, a claims adjustor for American Family, determined that "the amount to replace or repair the residence would be $231,231.73" and that the "actual cash value of the damage to the residence as provided by the terms of the policy of insurance was $156,527.82 after subtracting the depreciation of $74,703.91." Id. at 330. Thereafter, All Star Building Corporation ("All Star") provided an estimate to rebuild the house for $185,999.75. But on January 3, 2008, All Star amended its estimate to account for extra costs associated with bringing older parts of the house up to code and repairing a footer that had "eroded over the years." Id. at 332. The revised estimate to rebuild the Groces' house was increased by $39,246.15, for a total of $225,245.90.

The Groces had requested, and Meek had promised, "replacement cost" coverage for their dwelling. The American Family policy defined "replacement cost" in relevant part as follows:

> Buildings which have a permanent foundation and roof will be settled at replacement cost without deduction for depreciation, subject to the following:
>
> * * *
>
> (2) Replacement Cost.
>
>> (a) If at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, and the building is repaired or replaced, we will pay the full cost to repair or replace the damaged building without deducting depreciation, but not exceeding the smallest of:

3

   i. the limit in this policy for the building, including any additional amount of insurance as provided by the Inflation Protection Coverage;
   ii. the cost to replace the damaged building with like construction for similar use on the same premises; or
   iii. the amount actually and necessarily spent for repair or replacement of the damaged building.

Id. at 71 (emphases added).  Accordingly, American Family paid only up to the policy limit of $200,900 (plus the cost of debris removal) towards rebuilding the Groces' house. The Groces were left to pay the difference out-of-pocket.

On June 27, 2009, the Groces filed a complaint against American Family and Meek alleging negligence for failure to obtain replacement cost coverage for their dwelling and breach of contract for failure to pay the entire cost of the damage. American Family and Meek filed a joint motion for summary judgment, which the trial court granted following a hearing.  This appeal ensued.

## DISCUSSION AND DECISION

The Groces contend that the trial court erred when it granted American Family and Meek's joint summary judgment motion.  Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court.  Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law."  In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party.  The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party

4

to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004). While we are not bound by the trial court's findings and conclusions and give them no deference, they aid our review by providing the reasons for the trial court's decision. See GDC Envtl. Servs. Inc. v. Ransbottom Landfill, 740 N.E.2d 1254, 1257 (Ind. Ct. App. 2000).

Here, in its memorandum in opposition to summary judgment, the Groces clarified their negligence claims as follows:

> Plaintiffs contend this is a negligence case because[,] regardless of any limit of coverage, on August 18, 2003, Meek stated "I'm assuming you want replacement cost coverage . . . if anything ever happens—fire, tornado, wind [the residence] will be replaced 100%." When [Tracey] said "yes" and he replied, "I'll get this written up," Meek created a non-delegable duty on his part to obtain "100% replacement cost coverage" on the Residence. Plaintiffs reasonably relied on Meek's statements to determine how much insurance equaled "100% replacement cost coverage" because they were concerned about having enough insurance to rebuild their Residence and Meek was the insurance professional. Plaintiffs further contend that such a policy would have been in effect on the day of the fire but for the negligence of Michael Meek in (1) failing to determine the value of the Residence on August 18, 2003[,] and (2) failing to obtain "100% replacement cost coverage" in the last week in July or the first week in August 2007 when he was notified of the latest refinancing of Plaintiff's mortgage. These allegations in the Complaint focus on Meek's negligence

5

and the culpability of American Family as Meek's principal at all times relevant to the case.

Appellants' App. at 350-51.

American Family and Meek argued, and the trial court found, that the Groces' negligence claims were barred by the applicable two-year statute of limitations. See Ind. Code § 34-11-2-4. As our supreme court explained in Filip v. Block, 879 N.E.2d 1076, 1082-84 (Ind. 2008):

> In general, "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992). This rule also applies in the insurance context. Foster v. Auto–Owners Ins., Co., 703 N.E.2d 657, 659-60 (Ind. 1998) (holding that insurance applicants are not "relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs." (quoting Metro. Life Ins. Co. v. Alterovitz, 214 Ind. 186, 196, 14 N.E.2d 570, 574 (1938))).
>
> A. Claims for Obtaining Inadequate Coverage
>
> The candidates for dates starting the limitations period are the date of coverage, the date of the loss, the date of denial of the claim, and the date the insured learns or should in the exercise of reasonable care have learned of coverage problems.
>
> * * *
>
> The alleged negligence here was in failing to advise the Filips of the availability of some types of insurance, and in failing to secure adequate limits. We agree with the trial court that a claim against an agent for negligent procurement of the wrong coverage begins at the start of coverage if the breach was discoverable at that time through ordinary diligence.
>
> * * *
>
> The trial court relied on Page v. Hines, 594 N.E.2d 485 (Ind. Ct. App. 1992), in determining that in this case the statute of limitations began to run at the time of coverage. The Pages asked Hines, their insurance agent, to procure a three-year policy for them with the same coverage as their last policy. Id. at 486. Although their prior policy contained employer liability coverage, their new policy did not. Id. The Pages sued

6

Hines for negligent procurement of insurance. <u>Id.</u> The court explained, "[t]he question to be resolved is when the Pages discovered, or reasonably should have discovered, Hines's negligent failure to procure the insurance coverage they desired" from the start of coverage. <u>Id.</u> at 487. <u>We agree that this is the correct inquiry to resolve the limitations period for a claim of negligent failure to procure the proper coverage</u>.

The Filips argue that their negligence claim accrued when the fire occurred. The Filips claim that "[i]t is strange logic to believe that the Filips could have filed a lawsuit against Block in the year 2000 or 2001. . . . Clearly, a cause of action filed prior to a loss is not ripe." But insurance is about the shifting of risk. The Filips bore the risk of loss from the date the policy was issued, so their injury from the alleged negligence occurred at this point. Although the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action. <u>See</u> <u>Shideler v. Dwyer</u>, 275 Ind. 270, 282, 417 N.E.2d 281, 289 (1981) ("For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred.")[.] Presumably, no litigation would have been necessary to correct their policy and pay the adjusted premium for the desired coverage before the fire, but if for any reason the coverage was no longer available the Filips could have asserted their negligence claim if they felt that necessary. Further, if we accept the Filips' argument, then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred.

We do not hold, however, that the date of coverage is necessarily controlling in every case. The question in this case is at what point the Filips, in the exercise of ordinary diligence, could have discovered that they were underinsured. The Filips claim that their policy lacked coverage of nonbusiness personal property and business interruption, and that the building and business personal property coverage had inadequate limits. All of these alleged problems were ascertainable simply by reading the policy.[] As a result, the limitations period in this case began to run on or shortly after the activation of the policy with the exception discussed below for nonbusiness personal property.[1]

---

[1] In <u>Filip</u>, the designated evidence "indicate[d] that both the Filips and [the insurance agent] erroneously believed that the policy covered the Filips' nonbusiness personal property." 879 N.E.2d at 1085. Here, there is no designated evidence that Meek had any erroneous belief regarding the Groces' coverage under the replacement cost provision of the policy. Accordingly, the exception described in <u>Filip</u> does not apply here.

7

The Filips contend that they relied on Block's representations regarding the adequacy of the policy's coverage. The Filips are correct that "reasonable reliance upon an agent's representations can override an insured's duty to read the policy." Vill. Furniture, Inc. v. Assoc. Ins. Managers, Inc., 541 N.E.2d 306, 308 (Ind. Ct. App. 1989). In general, this exception negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered. Id. ("If the agent insists to the prospective purchaser that the policy will insure against a hazard . . . that the prospect is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively, dense and rebarbative policy language." (quoting Burns v. Rockford Life Ins. Co., 740 F.2d 542, 544 (7th Cir. 1984))).

The question, then, is whether there is any evidence that Block made representations to the Filips, which, if true, would have covered their loss and also tolled the running of the limitations period. The designated evidence reveals that the Filips told Block they wanted the same insurance as Bailey, the former owner of the property, and they received a substantially similar policy. The designated evidence also reveals that the Filips called Block several times between 1999 and 2003 to make changes in the coverage. These changes included increasing the coverage on the building from $250,000 to $350,000, adding Bailey as an additional insured, and changing the spelling of the Filips' names on the policy. The Filips, then, knew the policy well enough to make changes, but claim not to understand the commercial nature of the policy, the type of value coverage included, or the lack of business interruption coverage. Nothing in the designated evidence raises an issue of material fact, however, as to whether Block made representations regarding the inadequacy of the amount of business personal property coverage, whether the building coverage was replacement value or material value, or the lack of business interruption coverage. These shortcomings in their policy, which the Filips seek to attribute to Block's negligence, were readily ascertainable from the policy itself. Accordingly, as to these three alleged omissions, the statute of limitations began to run two years after the start of coverage, in 1999, and bars those three parts of the Filips' complaint, which was filed in 2003.

(Emphases added, footnote omitted).

Here, the crux of the Groces' argument on appeal is that, in 2003, Meek had stated, "I'm assuming you want replacement cost coverage . . . if anything ever

happens—fire, tornado, wind[—the residence] will be replaced 100%?" Appellants' App. at 338. Tracey had replied in the affirmative. The Groces now claim that they "did not know how much insurance coverage was required to provide '100% replacement cost coverage' and left that choice up to Meek." Id. And they allege that Meek had "caused the Plaintiffs to misunderstand the meaning of the term replacement cost coverage[.]" Id. at 35-36. In essence, the Groces contend that, in relying on Meek's statements, they had no reason to discover that they were underinsured until the fire occurred.[2]

But Meek did include replacement cost coverage in the Groces' homeowner's policy as promised, up to the policy limit. To the extent that the Groces claim that Meek misrepresented what replacement cost coverage was under their policy, they do not direct us to any designated evidence in support of that contention. And, just like the plaintiffs in Filip, the Groces made numerous changes to their homeowner's policy over the years, including requesting increases in the policy limits. In particular, between 2003 and October 2007, the Groces "refinanced the mortgage indebtedness on the Residence several times; [and] on each such occasion the amount of insurance provided by American Family for loss due to fire increased." Id. at 339. The Groces acknowledge having received numerous copies of "many Declaration pages for insurance policies written by American Family with steadily increasing amounts listed as insurance for loss by fire." Id. at 338. Thus, the Groces "knew the policy well enough to make changes,"

---

[2] Replacement cost coverage does not mean, as the Groces suggest, whatever coverage may be necessary to cover a loss when it occurs. It is a defined term under the policy. To the extent the Groces assert that they could not have discovered that they were underinsured until the fire occurred, our supreme court rejected that argument in Filip. As the court observed, if we accept the Groces' argument, "then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred." Filip, 879 N.E.2d at 1983-84.

9

but claim not to have understood the replacement cost provision. See Filip, 879 N.E.2d at 1084.

We hold that the alleged inadequacy of the replacement cost coverage in the Groces' American Family policy was "readily ascertainable from the policy itself." See Filip, 879 N.E.2d at 1084. Accordingly, the statute of limitations began to run at the time of coverage, in 2003, and bars the Groces' negligence claims, which were first asserted in 2009. See id.

Finally, we note that the Groces had asserted a breach of contract claim in their complaint. And American Family and Meek designated evidence and made argument in support of summary judgment on that claim. However, in their memorandum in opposition to summary judgment, the Groces expressly abandoned their breach of contract claim. See Appellants' App. at 350. And they make no argument on appeal with regard to a breach of contract claim. Accordingly, we need not address whether summary judgment was appropriate with respect to the Groces' breach of contract claim as alleged in their complaint.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.