ATTORNEYS FOR APPELLANTS
David P. Murphy
Emily M. Hawk
David P. Murphy & Associates, P.C.
Greenfield, Indiana

ATTORNEY FOR APPELLEES
Robert S. O'Dell
O'Dell & Associates, P.C.
Carmel, Indiana



## In the
## Indiana Supreme Court

_____

No. 48S02-1307-CT-472

CHRISTOPHER GROCE AND
TRACEY GROCE,                                                   *Appellants (Plaintiffs),*

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, AND
MICHAEL A. MEEK,                                               *Appellees (Defendants).*

_____

Appeal from the Madison Circuit Court, No. 48C01-0911-CT-967
The Honorable Rudolph R. Pyle, III, Judge

_____

On Transfer from the Indiana Court of Appeals, No. 48A02-1208-CT-703

_____

**April 3, 2014**

**Dickson, Chief Justice.**

In the litigation of this dispute between the plaintiffs, Christopher and Tracey Groce, who were insured under a homeowners policy issued by American Family Mutual Insurance Company and obtained through insurance agent Michael Meek, the trial court granted summary judgment for the defendants on various grounds including that the plaintiffs failed to commence the action within the applicable statute of limitations. Finding the statute of limitation defense applicable, the Court of Appeals affirmed. Groce v. Am. Family Ins., Co., 986 N.E.2d 828, 833 (Ind.

Ct. App. 2013). We granted transfer to reconsider the applicability of Filip v. Block, 879 N.E.2d 1076 (Ind. 2008), but conclude that the analysis of the Court of Appeals was sound.

In 1997, the Groces purchased a home and obtained a homeowners insurance policy from American Family. On October 21, 2007, the home sustained substantial fire damage. Additional facts will be supplied as needed and may be found in the opinion of the Court of Appeals. A dispute arose regarding the amount of insurance claim benefits payable under the policy, and on June 22, 2009, the Groces filed their complaint against the insurance company and Meek. The plaintiffs characterize this as a negligence action. Appellants' Br. at 18. They contend that "Meek negligently failed to obtain a fire insurance policy . . . which would have paid the entire cost of reconstructing their [r]esidence if it was damaged or destroyed by fire," and that the insurance company is vicariously liable for Meek's negligence. *Id.* at 18–19.

Such tort actions are governed by Indiana Code section 34-11-2-4, which requires that they be commenced within two years "after the cause of action accrues." In general, and in the context of claims of negligent procurement of insurance, "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Filip, 879 N.E.2d at 1082, *quoting* Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992). The arguments of the parties, the decision of the trial court, and the opinion of the Court of Appeals, each acknowledge that today's case is governed in large part by this Court's analysis in Filip, to which the present case is strikingly familiar.

In Filip, the plaintiffs, owners of an apartment complex substantially damaged by fire, brought an action against an insurance agency and its agent from whom the plaintiffs had obtained their insurance policy. Because of the coverage limitations, a substantial part of the loss was uninsured. The plaintiffs claimed that because the agent told them that their property would "be covered," they should have received replacement cost instead of actual value coverage, that the policy limit was less than replacement cost, that the policy failed to cover nonbusiness personal property, and that the policy failed to include business interruption coverage. The trial court granted summary judgment for the defendants because the two-year statute of limitations

2

for negligence claims had expired.  This Court affirmed the trial court, but in the process presented detailed legal analysis relevant and helpful to our consideration of the present case.

The Filip Court began its analysis noting "that a claim against an agent for negligent procurement of the wrong coverage begins at the start of coverage if the breach was discoverable at the time through ordinary diligence." *Id*. at 1082.  While the physical loss did not occur until the fire, a policyholder receives protection from risk of loss when the policy is issued, and thus any claim based on inadequacy of coverage generally occurs when the policy is issued.  *Id*. at 1083.  Because the Filip plaintiffs could have ascertained that "their policy lacked coverage of nonbusiness personal property and business interruption, and that the building and business personal property coverage had inadequate limits," the limitations period began to run as to such claims "on or shortly after the activitation of the policy." *Id.* at 1084.  An exception to this general rule exists when a policyholder reasonably relies upon an agent's representations where the agent "insists that a particular hazard [is] covered." *Id*.  This exception negates an insured's duty to read part of the policy. *Id.*  To determine the availability of such exception requires considering whether the agent "made representations to the [policyholder], which, if true, would have covered their loss and also tolled the running of the limitations period." *Id.*  Noting that the Filip plaintiffs had called their agent several times during the four years before the fire to make policy changes, including increasing the coverage limit, and that the designated evidence did not raise an issue as to whether the agent "made representations regarding the inadequacy of the amount of business personal property coverage, whether the building coverage was replacement value or material value, or the lack of business interruption coverage," the Filip Court found that these alleged policy shortcomings were "readily ascertainable from the policy itself" and thus the two year limitation period began to run immediately when the policy went into force. *Id.* at 1084–85.  As to the plaintiffs' claim of lack of coverage for nonbusiness personal property, however, evidence existed to indicate that both the policyholders and the agent believed such coverage was included and that the agent represented that the policyholders' property in the building would "be covered." *Id*. at 1085.  Under such circumstances, Filip acknowledged that the statute of limita-

3

tions "may have first begun to run when the claim was denied."[1]  *Id.*  The Court in <u>Filip</u> crystalized the issue there presented as: "at what point the [policyholders], in the exercise of ordinary diligence, could have discovered that they were underinsured."  *Id.* at 1084.

In the present case, the Groces' damage claim is predicated on their allegation that agent Meek failed to obtain a policy that would pay the entire cost of reconstruction in the event of fire.  Appellants' Br. at 18.  Their specific negligence claim is that "Meek negligently failed to obtain 100% replacement cost insurance protection on their [r]esidence after he inspected the premises on August 18, 2007."  *Id.* at 14.  This claim is predicated on an exchange between Michael Meek and Tracey Groce more than four years before the fire, as described in the following declarations of Tracey Groce in her affidavit in opposition to summary judgment:

> 10.  That on or about August 18, 2003 Meek met this Affiant at the Residence and after some initial pleasantries said to this Affiant "I'm assuming you want replacement cost coverage…if anything ever happens - fire, tornado, wind it (sic: the Residence) will be replaced 100%?"
> 11.  That this Affiant replied "yes."
> \*   \*   \*
> 15.  That after taking the measurements and requesting the amount of the mortgage, Meek said "I'll get this written up."

Appellants' App'x at 338.  On that date, August 18, 2003, a renewal policy was issued to the Groces that was apparently identical in all respects to the previously issued policy, except for the initial effective date and Meek's name as the replacement agent.[2]  Both policies, like each of the policies issued to the Groces for their residence beginning in March of 1997 and continuing at least annually until after the fire, consisted of the same standard policy form, although the policy limits and special endorsements varied through the years.  Appellee's App'x at 32–67.  This policy form provides for replacement cost protection if the "amount of insurance" is a specified percentage or more "of the full replacement cost" and if the damaged building is repaired or replaced.  Appellant's App'x at 109.  The policy provided that the insurance company would pay

---

[1] Summary judgment was nevertheless affirmed in <u>Filip</u> because, even if nonbusiness property had been covered, the resulting loss exceeding the policy limits and thus there were no resulting damages.
[2] The policy form, coverages, limits, and endorsements  appear to have been identical as shown in the "Declarations" pages for the two policies, the first with effective dates 08-15-2003 to 03-14-2004 and showing Kevin O. Michael as agent, and the second with effective dates 08-18-2003 to 03-14-2004 and showing Michael A. Meek as agent.  *Compare* pages 55 and 56 of Appellee's App'x.

4

"the full cost to repair or replace the damaged building, without deducting for depreciation, *but not exceeding*" repair costs and "*the limit in this policy* for the building, including any additional amount of insurance as provided by the Inflation Protection Coverage." *Id.* (emphasis added). In contrast, when the building is not repaired or replaced, the policy loss claim payments are calculated on "the actual cash value at the time of the loss" but not exceeding the replacement cost. *Id*.

In the present case, the payment from American Family to the Groces was not based on *actual cash value* but rather on a *replacement cost* calculation, without any deduction for depreciation. After the loss, the company calculated that the actual cash value of the damaged residence was $156,527.82 after depreciation, and that the estimates to rebuild and repair the home totaled $225,245.90. Because payment based on the policy's replacement cost provision was limited to the amount of insurance, that is, the policy's coverage limits, American Family paid the Groces the full policy limits, $191,500 (plus a payment under the policy's coverage for debris removal). The Groces thus received "replacement cost" coverage, but in an amount capped by the policy limits. The Groces claim they were entitled to payment of the full costs to rebuild and repair their home, without any limitation due to policy limits. They essentially claim that the alleged August 18, 2003 exchange between Meek and Tracey Groce operated to supersede the policy provisions regarding coverage limits and to require payment of any loss at full replacement cost in contravention of such limits. We do not view their claim as alleging that Meek failed to obtain replacement cost coverage. All of their American Family homeowners policies for the ten years before the fire loss included replacement cost coverage.

The Groces do not dispute that they were well aware of the their homeowners policy dwelling damage limits of $191,500. The Groces purchased their single family residence in Knightstown, Indiana, in March of 1997 for $47,500 with dwelling loss policy limits of $50,000. These limits were increased to $51,200 with the March 14, 1998 renewal, to $64,800 effective July of 1998, to $65,700 at the March 1999 renewal, to $67,500 in March of 2000, to $69,100 with the March 2001 renewal, to $70,100 with the March 2002 renewal, and to $70,500 with the March 2003 renewal. Later in 2003, the Groces were assigned to a new agent, Michael Meeks, who conducted a personal insurance review with the Groces on August 18, 2003. He advised

5

them that the replacement cost value for the dwelling loss coverage was $121,900, but the Groces did not request any increase in the policy limits. About November 2003, in light of a home addition and the need for partial roof replacement and chimney repair, the Groces increased their dwelling loss coverage to $140,000, effective November 4, 2003. Various additional increases in dwelling loss coverage limits occurred in the ensuing years, often associated with changes in the mortage. When the fire occurred on October 21, 2007, the dwelling coverage policy limits were $191,500. During the ten years from 1997 to 2007, the Groces received at least fourteen notices from American Family when the policy was renewed or changed, advising them of the amount of their dwelling loss coverage limits, and each reminding them to "Please Read Your Policy." *Id*. at 100.

Whether a cause of action is barred by the statute of limitations is an issue of law to be decided by the court, but if such determination hinges upon facts upon which there is a genuine dispute, it is generally an issue for the fact-finder and summary judgment is not appropriate. Cooper Indus., LLC v. City of South Bend, 899 N.E.2d 1274, 1279 (Ind. 2009).

The alleged 2003 failure of Meek to obtain 100% replacement cost coverage presents a claimed result (that policy loss limits are inapplicable to replacement cost coverage) easily "ascertainable from the policy itself." Filip, 879 N.E.2d at 1084. In fact, each American Family homeowners policy issued to the Groces from 1997 to 2007 expressly limited its dwelling loss replacement cost liability to the applicable policy limits. Without question, the Groces could have discovered that their dwelling loss replacement coverage did not exceed the applicable policy limits. As in Filip, assessing when the policyholders "discovered, or reasonably should have discoverd" their agent's negligent failure to procure the insurance coverage they desired is the "correct inquiry to resolve the limitations period for a claim of negligent failure to procure the proper coverage." *Id.* at 1083. And while Filip recognizes that "reasonable reliance upon an agent's representations can override an insured's duty to read the policy," *id.* at 1084 (citation omitted), the Groces' factual claim here is not that Meek made a representation of existing coverage but rather that, perceiving that they wanted 100% replacement coverage, Meek assured them that he would "get this written up." Appellant's App'x at 338. Meek's alleged comments dealt with his promise of future activity, and did not constitute any representation about existing pro-

6

visions related to coverages or limits in the homeowners policy.

In conclusion, we find from the undisputed facts that the Groces, in the exercise of ordinary diligence in reviewing their homeowners insurance policy, could have timely discovered that the company's replacement cost liability was capped at the dwelling loss coverage limit, contrary to their claim for negligent procurement of inadequate or wrong coverage. For this reason, the statute of limitations in this case began to run no later than the first policy renewal after the alleged statements of Meek to Tracey Groce on August 18, 2003. The trial court was correct to grant summary judgment on the basis of the applicable two-year statute of limitations.

The trial court's grant of the defendants' motion for summary judgment is affirmed.

Rucker, David, Massa, and Rush, JJ., concur.