## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Alfred H. Plummer III
Wabash, Indiana

ATTORNEY FOR APPELLEE

Christopher D. Cody
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Hipskind, | January 29, 2016 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 85A02-1508-PL-1239 |
| v. | Appeal from the Wabash Circuit Court |
| Insurance One Services, Inc., and David Vanderpool, | The Honorable Robert R. McCallen, III |
| *Appellees-Defendants.* | Trial Court Cause No. 85C01-1304-PL-246 |

**Najam, Judge.**

# Statement of the Case

[1] Timothy Hipskind appeals the trial court's summary judgment for Insurance One Services, Inc. ("Insurance One") and David Vanderpool. Hipskind raises a single issue for our review, namely, whether the trial court erred when it concluded that Hipskind had filed his complaint after the relevant statute of limitations had expired. We affirm.

# Facts and Procedural History

[2] In 2008, Hipskind purchased a home and real property in Wabash, Indiana ("the residence"). In the summer of 2009, Hipskind contacted Vanderpool, an insurance agent with Insurance One, to see if Vanderpool "could get [Hipskind] a better deal" than Hipskind's current insurer. Appellant's App. at 139. After obtaining several documents and speaking with Hipskind, Vanderpool prepared an insurance application for Hipskind to sign. Among other information, the insurance application stated that the residence had a living area of 1,875 square feet. However, an appraisal in Vanderpool's possession at the time stated that the residence had a living area of 2,020 square feet. Nonetheless, Hipskind affirmed that the information in the application was true to the best of his knowledge and executed it on August 10, 2009.

[3] Based on that application, Hipskind entered into a homeowners insurance contract with Auto-Owners Insurance Company ("Auto-Owners"). According to the Auto-Owners policy, insurance coverage for the dwelling was limited to $197,300. The policy further explained:

If the damaged covered property is insured . . . we will pay as follows:

> (a) If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, we will pay the full cost to repair or replace the damaged part of such covered property. No deduction will be made for depreciation. In no event shall we pay more than the smallest of:

>> 1) the limit of Insurance applying to the damaged covered property;

>> 2) the cost to replace the damaged covered property with equivalent construction for equivalent use at the residence premises; or

>> 3) the amount actually spent to repair or replace the damaged covered property.

Appellant's App. at 113 (emphases removed).

[4] On February 5, 2012, the residence was completely destroyed by fire. Hipskind then learned that the cost to replace the residence approximated $278,000, which Auto-Owners refused to fully pay. On April 23, 2013, Hipskind filed suit against Insurance One and Vanderpool for negligently failing to procure insurance and/or breach of a fiduciary duty. Insurance One and Vanderpool (hereinafter collectively referred to as "Vanderpool") moved for summary judgment on the grounds that Hipskind's complaint was untimely under the

relevant statute of limitations. The trial court later agreed and entered summary judgment for Vanderpool. This appeal ensued.

## Discussion and Decision

[5] Hipskind appeals the trial court's entry of summary judgment. Our standard of review for summary judgment appeals is well established. As our supreme court has stated:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[6] Summary judgment is a "high bar" for the moving party to clear in Indiana. *Id.* at 1004. "In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" *Id.* at 1003 (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)). Further:

> Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a "blunt . . . instrument" by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Id.* at 1003-04 (citations and some quotations omitted; omission original to *Hughley*). Thus, for the trial court to grant summary judgment, the movant must have made a prima facie showing that its designated evidence negated an element of the nonmovant's claims, and, in response, the nonmovant must have failed to designate evidence to establish a genuine issue of material fact. *See Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009).

Here, Hipskind asserts that the trial court erroneously concluded that the relevant statute of limitations began to run when he obtained the Auto-Owners policy. In his complaint, Hipskind alleged that Vanderpool "negligently failed to insure . . . the dwelling . . . at 100% of its replacement cost," and that this "breach of fiduciary duty and/or negligence" harmed Hipskind. Appellant's App. at 10. Hipskind does not dispute that his causes of action against Vanderpool are governed by the two-year statute of limitations found under Indiana Code Section § 34-11-2-4 (2009). Rather, Hipskind asserts only that the statute of limitations began to run after the residence was destroyed in February of 2012.

We must agree with the trial court and Vanderpool that Hipskind's complaint was not timely filed. As our supreme court has made clear, "the statute of limitations for negligence claims against an insurance agent for failure to obtain a desired form of coverage begins to run at the time the failure was first discoverable through ordinary diligence." *Filip v. Block*, 879 N.E.2d 1076, 1078 (Ind. 2008). In *Filip*, the court explained:

> . . . The alleged negligence here was in failing to advise the Filips [the insureds] of the availability of some types of insurance[] and in failing to secure adequate limits. We agree with the trial court that a claim against an agent for negligent procurement of the wrong coverage begins at the start of coverage if the breach was discoverable at that time through ordinary diligence.

* * *

The Filips argue that their negligence claim accrued when the fire occurred. The Filips claim that "[i]t is strange logic to believe that the Filips could have filed a lawsuit against Block in the year 2000 or 2001 [before the fire when coverage began] . . . . Clearly, a cause of action filed prior to a loss is not ripe." But insurance is about the shifting of risk. *The Filips bore the risk of loss from the date the policy was issued, so their injury from the alleged negligence occurred at this point. Although the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action. See Shideler v. Dwyer*, 275 Ind. 270, 282, 417 N.E.2d 281, 289 (1981) ("For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred."). Presumably, no litigation would have been necessary to correct their policy and pay the adjusted premium for the desired coverage before the fire, but if for any reason the coverage was no longer available the Filips could have asserted their negligence claim if they felt that necessary. *Further, if we accept the Filips' argument, then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred.*

*We do not hold, however, that the date of coverage is necessarily controlling in every case. The question in this case is at what point the Filips, in the exercise of ordinary diligence, could have discovered that they were underinsured.* The Filips claim that their policy lacked coverage of nonbusiness personal property and business interruption, and that the building and business personal property coverage had inadequate limits. *All of these alleged problems were ascertainable simply by reading the policy.* As a result, the limitations period in this case began to run on or shortly after the activation of the policy . . . .

*Id.* at 1082-84 (emphases added; footnote omitted; some omissions and alterations original). Similarly, for the Filips' additional claims against their agent for misrepresentation, the court stated, in relevant part, "[t]hese shortcomings [regarding the adequacy or type of coverage] in their policy, which the Filips seek to attribute to [their agent's] negligence, were readily ascertainable from the policy itself. Accordingly, . . . the statute of limitations began to run two years after the start of coverage . . . ." *Id.* at 1084-85; *see also Groce v. Am. Fam. Mut. Ins. Co.*, 5 N.E.3d 1154, 1157-59 (Ind. 2014) (holding that the insureds' argument that their insurance agent had represented to them that they would receive "full costs to rebuild and repair their home, without any limitation due to policy limits" did not "supersede" the clearly stated policy provisions and toll the statute of limitations because the insureds, "in the exercise of ordinary diligence in reviewing their homeowners insurance policy, could have timely discovered that the company's replacement cost liability was capped at the dwelling loss coverage limit").

[9]     *Filip* and *Groce* are controlling here. As in *Filip* and *Groce*, the terms and limitations of Hipskind's policy with Auto-Owners were plainly stated in the policy documents themselves. The declarations page clearly stated that the policy "limit[]" for the "[d]welling" was $197,300. Appellant's App. at 84. And the policy itself clearly stated that "[i]n no event" would the insurer "pay more than . . . the limit of insurance applying to the damaged covered property." *Id.* at 113.

[10]  Indeed, Hipskind's first argument on appeal is exactly the argument rejected by our supreme court in *Filip*. In particular, Hipskind alleges that Vanderpool negligently procured a policy with inadequate limits, or otherwise breached a duty to Hipskind in the procurement of the Auto-Owners policy, and that Hipskind could not have known about that alleged tortious conduct until the ensuing loss. But, again, as the *Filip* court explained, once Hipskind entered into his insurance agreement, he then "bore the risk of loss" above the policy limit. 879 N.E.2d at 1083. And, "[a]lthough the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action." *Id.* Further, to the extent Hipskind asserts that Vanderpool made representations to him that supersede the plain language of the policy, Hipskind's argument is contrary to our supreme court's analysis in *Groce*. 5 N.E.3d at 1157-59. Accordingly, Hipskind's arguments must fail.

[11]  Hipskind also asserts that "reading the policy does not help whatsoever" because Hipskind "had a limited education and no knowledge of the policy provisions or how they might affect him." Appellant's Br. at 8, 11. And in his statement of facts relevant to this appeal, Hipskind notes that he

> attended high school[] but did not finish and the highest grade he received [sic] was eleventh grade. He did obtain his G.E.D. and the only other education he had was truck driving school[,] obtaining a C.D.L.
>
> . . . He didn't read the policy[] because he didn't like reading gibberish to him and didn't understand insurance policy [sic], so

[he] didn't read it through. He was under the understanding that if your house burned down they [sic] would build a new one. That if you lost your stuff[,] you would get your stuff replaced, that's what he thought. The first time he was aware of replacement cost is when [an agent] assisted him in completing the Proof of Loss.

*Id.* at 7 (citations omitted). We reject Hipskind's statements insofar as they suggest that Hipskind's education level or unwillingness to avail himself of the meaning of his contract are grounds to ignore otherwise controlling Indiana Supreme Court precedent. *See, e.g.*, *Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657, 659-60 (Ind. 1998).

[12] In sum, the Indiana Supreme Court opinions in *Filip* and *Groce* control this appeal, and the trial court correctly concluded that the statute of limitations for Hipskind's complaint began to run when the policy took effect, which was on August 10, 2009. Because Hipskind did not file his complaint until April of 2013, well after the two-year statute of limitations had expired, Vanderpool is entitled to summary judgment as a matter of law. We affirm the trial court's entry of summary judgment.

[13] Affirmed.

Riley, J., and May, J., concur.