2021 IL App (1st) 200655-U
No. 1-20-0655
September 7, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the
limited circumstances allowed under Rule 23(e)(1)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | | Appeal from the Circuit Court |
| 2837-55 IRVING PARK, L.L.C. | ) | Of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Circuit Number 2019 009254 |
| v. | ) | |
| | ) | The Honorable |
| TOTAL INSURANCE SERVICES, INC.; | ) | Michael F. Otto |
| CRANDALL, DUBOW & HARNER, INC.; | ) | Judge Presiding. |
| SELECTIVE INSURANCE COMPANY | ) | |
| OF AMERICA; and JOHN | ) | |
| TOLIOPOULOS | ) | |
| | ) | |
| Defendant-Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Pierce concurred in the judgment.

**ORDER**

*Held*:  We reverse and remand the trial court's section 2-619 dismissal of the complaint where
there were genuine issues of material fact as to whether a reasonable customer, informed
by an agent that the policy includes coverage for lost business income, would understand,
after reading, that the policy did not provide the coverage.

¶ 1         2837-55 Irving Park, LLC (Irving Park), filed a complaint against Total Insurance Services, Inc. (Total Insurance), Crandall, Dubow & Harner, Inc. (CDH), John Toliopoulos, and Selective Insurance Company of America (Selective) for damages arising from a fire at real property Irving Park owned. The trial court dismissed the counts against Total Insurance, CDH, and Toliopoulos as untimely.  On appeal, Irving Park contends that its complaint adequately stated facts bringing it within the time allowed by the statute of limitations.  We reverse and remand.

¶ 2                                            I. BACKGROUND

¶ 3         Because the trial court dismissed the complaint on the pleadings, we take our facts from the complaint and take as true all well pleaded facts for purposes of our review. *Cochran v. Securitas Security Servicing USA, Inc.,* 2017 IL 121200, ¶ 11.

¶ 4         Irving Park bought insurance from The Hanover Insurance Group through John Toliopoulos, who worked as an insurance agent for Total Insurance and CDH.  In 2013, near the expiration of the Hanover policy, Toliopoulos obtained a property insurance quote from Selective.  When Martha Monastero of Irving Park discussed the Selective quote with Toliopoulos, "he informed her there were no changes in the new policy and it would have the same coverages, including the Business Income and Extra Expense Endorsement, as previous property insurance policies Toliopoulos had procured on Irving Park's behalf."  Subsequently, Irving Park purchased the Selective policy.

¶ 5         On October 16, 2018, a fire damaged Irving Park's property.  Irving Park made a claim for loss of business income, and Selective advised that Irving Park's policy did not cover lost business income. In August 2019, Irving Park sued Total Insurance, CDH, and Toliopoulos for

negligence, negligent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 2012)). Irving Park later amended the complaint to add a count against Selective for reformation of the contract.

¶ 6 Total Insurance, CDH, and Toliopoulos filed motions to dismiss the counts against them as untimely. See 735 ILCS 5/2-619 (West 2018). Irving Park responded to the motions to dismiss by attaching a copy of the Selective contract in effect at the time of the fire. The trial court dismissed the counts against Total Insurance, CDH, and Toliopoulos, leaving only the count against Selective unresolved. The court found no just cause to delay enforcement or appeal of its dismissal of three counts of the complaint. Irving Park now appeals.

¶ 7                                    II. ANALYSIS

¶ 8 Supreme Court Rule 304(a) gives this court jurisdiction over the appeal. Ill. S. Ct. R. 304(a) (eff. March 8, 2016). On appeal, Irving Park argues the facts pled in the complaint show that it filed the complaint within the applicable limitations period, and the statute of limitations for its cause of action violates the constitutional prohibition against special legislation. Ill. Const. 1970, art. IV, § 13.

¶ 9 A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint but asserts another affirmative matter that defeats the claim. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13. Such a motion also admits as true all well-pleaded facts and all reasonable inferences that can be drawn from them. *Id.* An action on the pleadings should not be dismissed unless it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to relief. *Perelman v. Fisher*, 298 Ill. App. 3d 1007 (1998). When the legal sufficiency of a complaint is challenged, a reviewing court must determine

whether the allegations set forth in the complaint, interpreted in a light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Id.* We review the dismissal of the complaint *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 10     Section 13-214.4 of the Code of Civil Procedure provides that "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2012).

¶ 11     Our supreme court, in *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13, held that a cause of action for negligent failure to procure insurance usually accrues when the customer receives the policy.  The *Krop* majority held the earliest date of accrual for torts arising out of contractual relationships is the date of the breach of the duty or the contract, not the date of the damages. *Indiana Insurance Co.* v. *Machon & Machon, Inc.*, 324 Ill.App.3d 300 (2001); *Hoover v. Country Mutual Ins. Co.*, 2012 IL App (1st) 110939, ¶ 52. Here the date of the alleged breach was March 21, 2012. In *Krop*, the breach occurred the day the insurance agent procured an insurance policy for the plaintiffs that did not cover defamation, invasion of privacy, and intentional infliction of emotional distress, for which the plaintiffs alleged they had asked. *Krop*, 2018 IL 122556, ¶¶ 18-19.

¶ 12     Irving Park argues that the complaint here falls within an exception to the usual rule.  Count 1 alleges Toliolpolis, acting on behalf of Total and CDH, obtained an insurance quote for

Irving; informed Irving's property manager that "there were no changes in the new policy and it would have the same coverages, including the Business Income and Extra Expense Endorsement, as previous property insurance policies Toliopoulos had procured on Irving's behalf"; that the property manager relied on those assurances; that unbeknownst to her, the policy did not contain the endorsement; and "Reading the policy would not have availed Irving as it could not have learned the extent of the differing coverage(s) by reading the Selective policy."

¶ 13        The *Krop* court found:

> "Although customers should read their policy and discover any defects, we recognize that there will be a narrow set of cases in which the policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy. In some cases, the insurance policies may contain contradictory provisions or fail to define key terms. In others the circumstances that give rise to the liability may be so unexpected that the typical customer should not be expected to anticipate how the policy applies." *Krop*, 2018 IL 122556, ¶ 36.

¶ 14        In support of its reasoning, the *Krop* court cited *Groce v. American Family Mutual Insurance Co.*, 5 N.E.3d 1154 (Ind. 2014) and *Filip v. Block*, 879 N.E.2d 1076, 1084 (Ind. 2008). In those cases, the Indiana Supreme Court asserted that "reasonable reliance upon an agent's representations can override an insured's duty to read the policy." *Filip*, 879 N.E.2d 1076, 1084; *Groce*, 5 N.E.3d 1154. Applying *Krop* to the facts of this case, we look to the policy to determine whether a trier of fact could find that "the policyholder reasonably could

not be expected to learn the extent of coverage simply by reading the policy." *Krop*, 2018 IL 122556, ¶ 36.

¶ 15      The Selective policy in effect at the time of the fire consumes more than 120 pages of the record on appeal.  It includes many separate pages of special inclusions and exclusions, with extensive exceptions to both the inclusions and the exclusions of the policy's coverage.  The policy provides in part:

> "Crisis Incident Business Income
>
> *** We will pay for the actual loss of 'crisis incident business income' you sustain due to the necessary 'suspension' of your 'operations' during the 'crisis incident period of restoration'. The suspension' must be caused by a 'covered crisis incident' at a 'covered location'.
>
> ***
>
> The amount of Crisis Incident Business Income loss will be determined based on:
>
> a. The Net Income of the business before the 'covered crisis incident' occurred.
>
> b. The likely Net Income of the business if no 'covered crisis incident' had occurred. ***
>
> c. The operating expenses, including payroll expenses, necessary to resume 'operations' with the same quality of service that existed just before the 'covered crisis incident'. ***
>
> ***

Auto Physical Damage Business Income

We will pay for the loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss or damage to a 'covered motor vehicle'. ***

***

Back Up of Sewer, Drain or Sump – Business Income

We will pay for the loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss or damage to Covered Property at described premises. The loss or damage must be caused by or result from *** Water or waterborne material that backs up or overflows. ***

***

Building Owner - Lessor's Leasehold Interest

We will pay for loss of 'leasehold interest' in the event that your tenant(s) cancel their lease(s) in a described premise, due to untenantability as a result of direct physical loss or damage to the described premises caused by or resulting from a Covered Cause of Loss.

'Leasehold interest' means the difference between the:

1. Rent you were collecting at the described premises prior to the loss; and

7

2. Rental Value of the described premises after loss or damage has been repaired or rebuilt. \*\*\*

\*\*\*

Denial of Service

We will pay for the loss of Business Income you sustain caused by or resulting from a 'denial of service attack'. \*\*\*

\*\*\*

Dependent Properties

We will pay for the loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss or damage to 'dependent property' caused by or resulting from a Covered Cause of Loss \*\*\*

\*\*\*

Food Contamination Shutdown

We will pay for the:

1. Loss of Business Income you sustain; and

2. Extra Expense you incur from the necessary 'suspension' of your 'operations' because the Board of Health, or another government authority, has issued an order to you in connection with the discovery of or suspicion of 'food contamination.' \*\*\*

\*\*\*

Pollutant Clean-Up and Removal - Business Income

We will pay for the loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by the discharge, dispersal, seepage, migration, release or escape of 'pollutants' to land or water at the described premises. ***

\*\*\*

Unnamed Premises - Business Income

We will pay for:

1. The loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'; and

2. The reasonable and necessary Extra Expense you incur during the 'period of restoration'; as a result of direct physical loss or damage to property at 'unnamed premises caused by or resulting from a Covered Cause of Loss."

¶ 16    The trial court found that the policy unambiguously excluded coverage for the loss of business income, and no trier of fact could find that a reasonable customer reading the policy, after an agent told the customer the policy provided coverage for loss of business income, would think it provided coverage for loss of business income. In support of its finding, the trial court noted that the Hanover policy's coverage page had a separate line labeled "Business Income and Extra Expense ALS," with a separate premium listed, while the Selective policy had no line so labeled. However, the Selective policy had different labels for many of the coverages it included in common with the Hanover policy. "Identity Theft Resolution

Services" from the Hanover policy probably corresponds to the Selective policy's "Identity Recovery Coverage," but the "Greenpac Enhancement Endorsement" in the Selective policy has no obvious counterpart in the Hanover list of coverages. The absence of a line specifically labeled "Business Income and Extra Expense ALS" from the Selective policy does not, suffice to prove unequivocally that all reasonable readers would know that similar coverage would not show up under a different heading.

¶ 17    The trial court also noted that the list of coverages in the Selective policy has a blank next to a line labeled "Business Income/Extra Expense Related Additional Coverages. Nonetheless, the policy shows:

"Business Income/Extra Expense Related Additional Coverages

    Auto Physical Damage Business Income                    $25,000

    Back Up of Sewer, Drain or Sump – Business Income      $100,000

    Building Owner - Lessor's Leasehold Interest……………. $25,000"

The page continues with other subheadings under the category of Business Income/Extra Expense, all showing an amount covered for each category of loss.

¶ 18    We hold that the policy presents a question for the trier of fact as to whether a reasonable customer, informed by an agent that the policy includes coverage for lost business income, would understand, after reading, the 120-page policy, that the agent misrepresented the policy, and the policy did not provide coverage for lost business income.

¶ 19    III. CONCLUSION

10

¶ 20     The provisions of the insurance policy, considering the allegations of the complaint, could support a finding that Irving Park "reasonably could not be expected to learn" that it lacked coverage for lost business income simply by reading the policy. See *Krop*, 2018 IL 122556, ¶ 36. Because Irving Park might prove facts showing that its reasonable reliance upon the agent's representations overrode its duty as the insured to read the policy, thus falling within the narrow exception enunciated in *Krop*, we reverse and remand for further proceedings on the complaint. In accord with the avoidance doctrine (see *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38), we do not address Irving Park's constitutional challenge to section 3-214.4 of the Code of Civil Procedure.

¶ 21     Reversed and remanded.