ATTORNEY FOR APPELLANTS
Robert W. Mysliwiec
South Bend, Indiana

ATTORNEY FOR APPELLEES
Philip E. Kalamaros
St. Joseph, Michigan

ATTORNEYS FOR AMICUS CURIAE
INDIANAPOLIS BAR ASSOCIATION
APPELLATE PRACTICE SECTION
Paul L. Jefferson
Bryan H. Babb
Geoffrey G. Slaughter
Jana K. Strain
Kent D. Zepick
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____



FILED
Jan 29 2008, 11:30 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 75S05-0704-CV-149

IDAN (JOHN) FILIP AND
VALARIA FILIP,

> *Appellants (Plaintiffs below),*

v.

CARRIE BLOCK AND 1ST CHOICE
INSURANCE AGENCY,

> *Appellees (Defendants below).*

_____

Appeal from the Starke Circuit Court, No. 75C01-0309-PL-72
The Honorable Kim Hall, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 75A05-0601-CV-10

_____

**January 29, 2008**

**Boehm, Justice.**

Indiana Trial Rule 56(C) requires parties to designate the evidence in support of or opposition to a motion for summary judgment.  We hold that this designation may be

accomplished in any one of several places but must be done consistently. A court may resolve any inconsistencies in designations against the designating party. We also hold that the statute of limitations for negligence claims against an insurance agent for failure to obtain a desired form of coverage begins to run at the time the failure was first discoverable through ordinary diligence.

### Facts and Procedural History

In late 1998, Idan (John) and Valaria Filip purchased Sundown Apartments, a six-unit building in Knox, Indiana. In January of 1999, the Filips met with Carrie Block, an insurance agent for 1st Choice Insurance Agency, which had served the prior owner, Coet Bailey. The Filips told Block that they wanted the same coverage as Bailey, and Block arranged for a commercial insurance policy from Auto-Owners Insurance that was substantially similar to Bailey's. The Filips moved into one unit of Sundown and rented out the other five. Although Block was aware that the Filips lived in Sundown, the policy did not cover nonbusiness personal property, and there was no separate tenant's policy. According to the Filips, at the time the policy was first issued, Block told the Filips their property would "be covered" and she would visit the premises. Between 1999 and 2003, the Filips made several changes to their policy, including increasing the property damage limits from $250,000 to $350,000, adding Bailey as an additional insured, and changing the spelling of the Filips' names.

On April 8, 2003, a fire substantially destroyed Sundown. Because of the coverage limitations described below, a substantial part of the loss was uninsured. The Filips sued Block and 1st Choice, alleging negligence in the selection of insurance. Specifically, the Filips claimed that (1) their actual value coverage for the building provided approximately $50,000 less than its replacement cost; (2) the policy limit of $25,000 on business personal property was at least $17,000 less than replacement cost; (3) there was no coverage for the Filips' nonbusiness personal property in the unit that they occupied, valued at $128,000; and (4) there was no business interruption coverage, leaving an uninsured loss of at least $30,000.

Block and 1st Choice responded to the Complaint with a "Motion for Summary Judgment" and an accompanying "Memorandum of Law in Support of Motion for Summary Judgment." The motion identified the pages of the record they designated in support of their

motion pursuant to Trial Rule 56(C), and the memorandum specified lines and paragraphs from the pages identified in the motion. In some instances, evidence arguably relevant to the motion appeared on the page identified in the motion but not in the lines specified in the memorandum.[1]

The defendants' motion and memorandum were filed on August 1, 2005. On September 30, after the thirty days specified in Trial Rule 56(C), the Filips responded by filing "Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Disposition," "Plaintiff's Designation of Issues of Fact," and "Plaintiff's Designation of Evidence in Opposition to Defendant's Motion for Judgment." On December 9, 2005, the trial court struck the untimely designation of evidence, and limited the Filips' evidence in opposition to summary judgment to the lines and paragraphs specified in the defendants' memorandum. The same day, the trial court granted summary judgment in favor of the defendants, holding that the two-year statute of limitations for negligence started on the date of initial coverage in 1999.

The Filips appealed. The Court of Appeals reversed on two grounds. First, the Court of Appeals held that the Filips could rely on the pages identified in the defendants' motion, and were not limited to the lines and paragraphs specified in the memorandum. Filip v. Block, 858

---

[1] For example, the defendants identified page 14 of Block's deposition in their motion, but their memorandum specified lines 1-4 of that page. The specified lines read:

A  Yes.
Q  And it looks like the Filips also signed the
second page at the bottom?
A  Yes.

Lines 8-20 of the identified page read:

Q  Were you aware that the Filips were living in
that building?
A  Yes.
Q  Was it your understanding when this application
was completed that the entire building would be
covered?
A  Yes.
Q  And how about contents?
A  Yes, we wrote contents coverage.
Q  To the extent that they were living in one of
the units did you believe the contents of that
unit where they were living would be covered?
A  Yes, under the $25,000 of personal property.

N.E.2d 143, 150 (Ind. Ct. App. 2006). Second, the Court of Appeals held that the statute of limitations did not bar the Filips' complaint because the statutory period for negligence against an insurance agent starts to run when the claim is denied. Id. at 152. We granted transfer. 869 N.E.2d 455 (Ind. 2007).

## Standard of Review

This Court applies the same standard as the trial court when reviewing decisions of summary judgment. Row v. Holt, 864 N.E.2d 1011, 1013 (Ind. 2007). Therefore, this Court must reverse summary judgment unless there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id. All facts and reasonable inferences from them are to be construed in favor of the nonmoving party. Naugle v. Beech Grove City Sch., 864 N.E.2d 1058, 1062 (Ind. 2007).

## I. Designation of Evidence Pursuant to Trial Rule 56(C)

Trial Rule 56(C) requires that "[a]t the time of filing the motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." From time to time, the Court of Appeals has observed that there is no general agreement as to the place or manner of making the required designation. See, e.g., Nat'l Bd. of Exam'rs for Osteopathic Physicians & Surgeons, Inc. v. Am. Osteopathic Ass'n, 645 N.E.2d 608, 615 (Ind. Ct. App. 1994). Some panels of the Court of Appeals have expressed a preference that parties place the designation "in their motions or responses, not necessarily in the supporting briefs." Id. at 613 (emphasis omitted) (quoting Pierce v. Bank One-Franklin, NA, 618 N.E.2d 16, 19 (Ind. Ct. App. 1993)). However, the Court of Appeals has, in various circumstances, allowed parties to use a brief or memorandum, even affidavits, to fulfill the designation requirement as long as the trial court is informed of the materials relied upon. See, e.g., 3A William F. Harvey, Indiana Practice: Rules of Procedure Annotated § 56.7, at 283 (3d ed. 2002) ("[A] brief or memorandum may be used as the means to fulfill the designation requirement of Trial Rule 56.") (collecting cases); see also Swan v. TRW, Inc., 634 N.E.2d 794, 796 n.1 (Ind. Ct. App. 1994) (holding that although the parties did not follow the recommended format, "the trial court was apparently apprised of the specific material" relied upon by the

4

parties); <u>Mid State Bank v. 84 Lumber Co.</u>, 629 N.E.2d 909, 913 (Ind. Ct. App. 1994) (holding that a party could use affidavits noting specific exhibits, attached to the complaint, to fulfill its designation requirement); <u>Vogler v. Dominguez</u>, 624 N.E.2d 56, 58 (Ind. Ct. App. 1993) (holding that identification in "a summary judgment brief complies with the designation requirement of T.R. 56(C)").

In this case, the Court of Appeals held that "the main designation of evidence should take place in the motion and response, with the accompanying briefs or memoranda playing merely a supporting, persuasive role." <u>Filip v. Block</u>, 858 N.E.2d 143, 149 (Ind. Ct. App. 2006). The defendants identified entire pages from depositions in their motion but specified lines and paragraphs from those pages in their memorandum. The Court of Appeals held that "absent any further specification in Appellees' Motion [for Summary Judgment], the entire page is designated and available to establish the propriety of the summary judgment." <u>Id.</u> at 150.

Trial Rule 56(C) does not mandate either the form of designation, i.e., the degree of specificity required, or its placement, i.e., the filing in which the designation is to be made. Trial Rule 56(C) does compel parties to identify the "parts" of any document upon which they rely. The Rule thus requires sufficient specificity to identify the relevant portions of a document, and so, for example, the designation of an entire deposition is inadequate. <u>AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.</u>, 816 N.E.2d 40, 45 (Ind. Ct. App. 2004). Although page numbers are usually sufficient, a more detailed specification, such as supplying line numbers, is preferred. Adding verbatim quotations of the selected items gives the trial court a more convenient reference, but is not required and may be excessive if large quantities of text are designated.

Parties may choose the placement of evidence designation. <u>Id.</u> at 46; <u>Am. Osteopathic Ass'n</u>, 645 N.E.2d at 615. Designation may be placed in a motion for summary judgment, a memorandum supporting or opposing the motion, a separate filing identifying itself as the designation of evidence, or an appendix to the motion or memorandum. The only requirement as to placement is that the designation clearly identify listed materials as designated evidence in support of or opposition to the motion for summary judgment. If the designation is not in the motion itself, it must be in a paper filed with the motion, and the motion should recite where the designation of evidence is to be found in the accompanying papers.

The defendants here designated evidence both in their motion and their memorandum. They now claim that only the more specific designations in their memorandum are designated evidence for the purposes of Trial Rule 56(C). Although a party can choose where to designate evidence, we agree with the Court of Appeals that the courts and opposing parties should not be required to flip from one document to another to identify the evidence a party claims is relevant to its motion. See Filip, 858 N.E.2d at 149. Rather, the entire designation must be in a single place, whether as a separate document or appendix or as a part of a motion or other filing. If a party designates both specific lines or text and also more general identification of the document containing the specified lines, the court may limit that party to the more specific designation.

On the other hand, a party may rely on designations by an opposing party, even if inconsistently designated in different places. Any confusion as to what comprised the formal designation in this case was created by the defendants. Having stated in their motion that they designated, for example, pages 18-25 of a deposition, the defendants may not later provide an alternative designation of specific lines and paragraphs and prevent the Filips from relying on the remainder of the designated pages. The Filips may therefore rely on the entire designated pages identified in the defendants' motion in opposing summary judgment. The significance of this point in this case is addressed in the following discussion of the accrual date for claims of negligence.

Finally, although the Filips' motion in opposition to summary judgment was stricken from the record as untimely, their failure to designate evidence is not fatal. Trial Rule 56(C) provides that "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." Additionally, evidence should be liberally construed in favor of the nonmovant "to ensure that he is not improperly denied his day in court . . . ." Rosi v. Bus. Furniture Corp., 615 N.E.2d 431, 434 n.2 (Ind. 1993); see also Ind. Dep't of State Revenue v. Caylor-Nickel Clinic, P.C., 587 N.E.2d 1311, 1313 (Ind. 1992).

## II. Accrual Date for a Negligence Action Against an Insurance Agent

The Filips and defendants agree that under Indiana Code section 34-11-2-4 (2004), the statute of limitations is two years from the date the cause of action accrues. In general, "the

cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992). This rule also applies in the insurance context. Foster v. Auto-Owners Ins., Co., 703 N.E.2d 657, 659-60 (Ind. 1998) (holding that insurance applicants are not "relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs." (quoting Metro. Life Ins. Co. v. Alterovitz, 214 Ind. 186, 196, 14 N.E.2d 570, 574 (1938))).

A. *Claims for Obtaining Inadequate Coverage*

The candidates for dates starting the limitations period are the date of coverage, the date of the loss, the date of denial of the claim, and the date the insured learns or should in the exercise of reasonable care have learned of coverage problems. Other jurisdictions have split on the start of the statute of limitations for negligence claims against an insurance agent. See, e.g., Commonwealth Ins. Co. v. Stone Container Corp., 323 F.3d 507, 511 (7th Cir. 2003) (collecting cases); Broadnax v. Morrow, 762 N.E.2d 1152, 1157 (Ill. App. Ct. 2002) (holding that the statute of limitations against agent began to run at time of insurance denial because injury discoverable); Cunningham v. Ins. Co. of N. Am., 2006 WL 2568464, at *5 (N.Y. App. Div. 2006) (holding that the statute of limitations against agent begins at time of injury); Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7-9 (Pa. Super. Ct. 2004) (holding that the statute of limitations against agent started when insured received insurance policy because injury discoverable). The alleged negligence here was in failing to advise the Filips of the availability of some types of insurance, and in failing to secure adequate limits. We agree with the trial court that a claim against an agent for negligent procurement of the wrong coverage begins at the start of coverage if the breach was discoverable at that time through ordinary diligence.

The Court of Appeals held that under Butler v. Williams, 527 N.E.2d 231, 234 (Ind. Ct. App. 1988), and its progeny, the Filips' claim was not foreclosed by the statute of limitations because they filed within two years of the fire, which was necessarily earlier than the date of denial of the claim, which is not in the record. Filip v. Block, 858 N.E.2d 143, 152 (Ind. Ct. App. 2006). We do not find Butler to be on point. In that case, the Williamses were injured by a

7

drunk driver and sued the owners of the tavern that served the driver. 527 N.E.2d at 232-33. The tavern's insurer denied coverage based on an exclusion for liability resulting from serving alcoholic beverages. Id. The tavern assigned to the Williamses any claims against their insurer for failing to recommend dram shop coverage. Id. at 233. Five years after the accident, and three years after coverage was denied, the Williamses sued the tavern's insurer and insurance agent. Id. The Court of Appeals noted that the statute of limitations began to run against the Williamses at the same time it ran against the tavern. Id. at 234. The Court of Appeals stated "the latest date on which the [tavern's] cause of action against their insurer and insurance company could have accrued" was the date when the tavern was told that it had no coverage. Id.

Butler held only that all critical dates had passed, not that the critical date was denial of coverage. The Court of Appeals adopted the same language in Strauser v. Westfield Ins. Co., 827 N.E.2d 1181, 1185 (Ind. Ct. App. 2005). In Strauser, horses on Yoder's land broke loose and injured Strauser on September 18, 1991. Id. at 1182. Strauser sued Yoder on August 6, 1992. Id. Yoder's insurer denied coverage and in 1995 Yoder assigned any claim he might have against his insurance agent to Strauser. Id. Strauser sued the agent in 2002. Id. The court cited Butler and found the claim barred by the two-year limitation because "Strauser's cause of action accrued on June 4, 1992, when Westfield denied Yoder's claim." Id. at 1185. As in Butler, the claim was barred whether the date of coverage or the date of the loss triggered the limitation period, so this too was no holding on the point in issue here.

The trial court relied on Page v. Hines, 594 N.E.2d 485 (Ind. Ct. App. 1992), in determining that in this case the statute of limitations began to run at the time of coverage. The Pages asked Hines, their insurance agent, to procure a three-year policy for them with the same coverage as their last policy. Id. at 486. Although their prior policy contained employer liability coverage, their new policy did not. Id. The Pages sued Hines for negligent procurement of insurance. Id. The court explained, "[t]he question to be resolved is when the Pages discovered, or reasonably should have discovered, Hines's negligent failure to procure the insurance coverage they desired" from the start of coverage. Id. at 487. We agree that this is the correct inquiry to resolve the limitations period for a claim of negligent failure to procure the proper coverage.

8

The Filips argue that their negligence claim accrued when the fire occurred. The Filips claim that "[i]t is strange logic to believe that the Filips could have filed a lawsuit against Block in the year 2000 or 2001 . . . . Clearly, a cause of action filed prior to a loss is not ripe." But insurance is about the shifting of risk. The Filips bore the risk of loss from the date the policy was issued, so their injury from the alleged negligence occurred at this point. Although the extent of damages was unknown within the statute of limitations, the full extent of damages need not be known to give rise to a cause of action. See Shideler v. Dwyer, 275 Ind. 270, 282, 417 N.E.2d 281, 289 (1981) ("For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred."). Presumably, no litigation would have been necessary to correct their policy and pay the adjusted premium for the desired coverage before the fire, but if for any reason the coverage was no longer available the Filips could have asserted their negligence claim if they felt that necessary. Further, if we accept the Filips' argument, then insureds become free riders, paying lower premiums, perhaps for many years, and then retaining the ability to claim the benefit of higher coverage if a loss is incurred.

We do not hold, however, that the date of coverage is necessarily controlling in every case. The question in this case is at what point the Filips, in the exercise of ordinary diligence, could have discovered that they were underinsured. The Filips claim that their policy lacked coverage of nonbusiness personal property and business interruption, and that the building and business personal property coverage had inadequate limits. All of these alleged problems were ascertainable simply by reading the policy.[2] As a result, the limitations period in this case began to run on or shortly after the activation of the policy with the exception discussed below for nonbusiness personal property.

B. *Claims of Reliance on Representations*

---

[2] The parties argue about whether the Filips received their entire policy or only yearly declarations. Idan Filip testified that he received and read the full policy "right after" he bought the apartments. He then said that he received a "declaration" and had "probably" received the whole policy. In any event, Idan also testified that he had seen the policy limits "right after" he bought the apartments. The limits were not shown in the declarations designated in the record.

9

The Filips contend that they relied on Block's representations regarding the adequacy of the policy's coverage. The Filips are correct that "reasonable reliance upon an agent's representations can override an insured's duty to read the policy." Vill. Furniture, Inc. v. Assoc. Ins. Managers, Inc., 541 N.E.2d 306, 308 (Ind. Ct. App. 1989). In general, this exception negates an insured's duty to read part of the policy if an agent insists that a particular hazard will be covered. Id. ("If the agent insists to the prospective purchaser that the policy will insure against a hazard . . . that the prospect is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively, dense and rebarbative policy language." (quoting Burns v. Rockford Life Ins. Co., 740 F.2d 542, 544 (7th Cir. 1984))).

The question, then, is whether there is any evidence that Block made representations to the Filips, which, if true, would have covered their loss and also tolled the running of the limitations period. The designated evidence reveals that the Filips told Block they wanted the same insurance as Bailey, the former owner of the property, and they received a substantially similar policy. The designated evidence also reveals that the Filips called Block several times between 1999 and 2003 to make changes in the coverage. These changes included increasing the coverage on the building from $250,000 to $350,000, adding Bailey as an additional insured, and changing the spelling of the Filips' names on the policy. The Filips, then, knew the policy well enough to make changes, but claim not to understand the commercial nature of the policy, the type of value coverage included, or the lack of business interruption coverage. Nothing in the designated evidence raises an issue of material fact, however, as to whether Block made representations regarding the inadequacy of the amount of business personal property coverage, whether the building coverage was replacement value or material value, or the lack of business interruption coverage. These shortcomings in their policy, which the Filips seek to attribute to Block's negligence, were readily ascertainable from the policy itself. Accordingly, as to these three alleged omissions, the statute of limitations began to run two years after the start of coverage, in 1999, and bars those three parts of the Filips' complaint, which was filed in 2003.

The claim for lack of coverage of nonbusiness personal property is somewhat different. The designated evidence indicates that both the Filips and Block erroneously believed that the

10

policy covered the Filips' nonbusiness personal property. Specifically, Valaria testified that Block told her that the Filips' property in the building would "be covered." The Filips claim to have relied on Block's assertions regarding this coverage. Because we take the evidence most favorable to the Filips in opposing summary judgment, it was error to base summary judgment on the statute of limitations for the claim for lack of nonbusiness personal property coverage. If the trier of fact accepts the Filips' version, the statute may have first begun to run when the claim was denied.

In sum, for the purposes of summary judgment, there is evidence that Block breached the duty of care because she incorrectly believed nonbusiness personal property was covered. There are no damages from this breach, however. Even if the Filips relied on Block's assurances that their nonbusiness personal property was "covered," based on the information the Filips had, the only possible coverage was under the business personalty. The losses of business personal property exceeded the personal property policy limits by $17,000. If nonbusiness property had been covered, these limits, which were known to the Filips, would have prevented any recovery for its loss.

### C. *Claims for Failure to Advise as to Coverage*

Insurance agents potentially have both a general duty of care and a duty to advise their clients. Which duty governs in a particular case is a matter of law. Am. Family Mut. Ins. Co. v. Dye, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994), trans. denied. "[T]he law in Indiana is settled: an insured must demonstrate some type of special relationship for a duty to advise to exist." Craven v. State Farm Mut. Auto. Ins. Co., 588 N.E.2d 1294, 1297 n.5 (Ind. Ct. App. 1992). As to the appropriate coverage, the Filips do not argue that they are entitled to a determination of a special relationship, but seek to describe the duty of care broadly to include the obligation to "identify the insured's desires with regard to insurance and explain to the insureds various coverages available to meet those desires." The Filips are essentially arguing the duty to advise under the guise of the general duty of care. The facts of this case do indicate, however, that Block may have assumed a duty to advise with regard to the nonbusiness personal property coverage.

11

The undisputed evidence is that the Filips requested the same coverage as their predecessor. In the absence of a special duty, "[a]n insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill, and good faith diligence in obtaining insurance." Am. Family Mut. Ins. Co., 634 N.E.2d at 847; see generally 16 Indiana Law Encyclopedia, Insurance §§ 51-52, at 204 (West 1999) ("An insurance agent owes his or her clients a duty to exercise reasonable care in servicing their insurance needs."). Included in this general duty is a duty of care to procure the insurance asked for by the potential insured. See generally 43 Am. Jur. 2d Insurance §§ 161-163, at 202 (2003) ("A broker or agent who accepts an order to insure must follow the customer's instructions."). The agent does not have a duty, however, to tell the potential insured about the adequacy of the coverage or any alternative coverage that is available. See generally Lee R. Russ, 4 Couch on Insurance § 55:5, at 55-10, -12 (3d ed. 1995) ("The general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them. . . . [I]nsurer's agents are not required under a general duty of care to advise the insured regarding the sufficiency of coverage limits or replacement value of insured's home."). Similarly, the Court of Appeals has held that in the absence of a special relationship an agent has no duty to advise of the availability of a particular form of coverage.[3] We agree there is no such expansive duty if, as here, the insured identifies the desired coverage.

The Filips argue that Block had a duty to inform them of the availability of separate coverage for their nonbusiness personal property, and point to their testimony that Block promised to visit Sundown. A visit would presumably have indicated lack of coverage of the nonbusiness personal property, and perhaps triggered some discussion of the adequacy of their limits or other coverages. Although in general an agent does not have a responsibility to tell any potential insureds about the availability of different coverage options or to visit the premises, the Filips assert that they relied on Block's assertion regarding the coverage of their personal

---

[3] In Parker v. State Farm Mut. Auto. Ins. Co., 630 N.E.2d 567, 569 (Ind. Ct. App. 1994), trans. denied, the Parkers had never discussed underinsured motorist coverage with their agent. State Farm notified them of its availability, and the Parkers added that coverage. Id. Before the policy became effective Kelly Parker was injured by an underinsured motorist. Id. at 568-69. The Parkers sued State Farm and their agent, alleging that before State Farm's notification, their agent had a duty to advise them of the availability of underinsured coverage. Id. at 569. The court found no special relationship between the Parkers and their agent, and therefore no duty to advise the Parkers. Id. at 570.

property, and her promise to visit the premises. Accordingly, there is a material question of fact as to whether Block assumed a special relationship, obligating her to advise the Filips at least as to inadequate coverage of the nonbusiness personal property. If there was a breach, however, it occurred in 1999, and there is no evidence that Block undertook an ongoing review of the Filips' insurance needs. The Filips requested changes in limits in subsequent years, but did not change their personal property coverage. There is thus no evidence of a special relationship imposing a duty on Block to review and advise as to adequacy of coverage within the statute of limitations.

## Conclusion

The trial court's grant of summary judgment is affirmed.

Shepard, C.J., and Sullivan and Rucker, JJ., concur.

Dickson, J., concurs in Part I but dissents as to Part II, believing that genuine issues of material fact preclude summary judgment.