# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**DONALD E. WERTHEIMER**
South Bend, Indiana

ATTORNEY FOR APPELLEES:

**J. THOMAS VETNE**
**JANET G. HORVATH**
Jones Obenchain, LLP
South Bend, Indiana

**ROBERT S. O'DELL**
O'Dell & Associates, P.C.
Carmel, Indiana



FILED
Aug 26 2014, 9:46 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARYL SCHWEITZER and LYNN SCHWEITZER, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1307-CT-248 |
| | ) | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY and JENNIFER GHOLSON INSURANCE AGENCY | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Gerald N. Svetanoff, Judge
Cause No. 45D04-1010-CT-242

**August 26, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Daryl and Lynn Schweitzer appeal the trial court's order granting summary judgment in favor of American Family Mutual Insurance Company ("American Family") and Jennifer Gholson Insurance Agency ("Gholson," and together with American Family, "Appellees"). The Schweitzers raise two issues, which we revise and restate as whether the court erred in entering summary judgment in favor of Appellees and against the Schweitzers. We affirm.

FACTS AND PROCEDURAL HISTORY

At some point prior to January 2008, the Schweitzers became interested in insuring their home, automobiles, and rental properties using one insurance company. Following conversations with Gholson, the Schweitzers purchased a homeowners insurance policy from American Family. The policy provided that it was effective from January 18, 2008, to January 18, 2009, and that the amount of the coverage limit for the dwelling was $261,000.[1] The policy also included coverage for personal property and personal liability, and supplemental coverage of increased building limit coverage, whereby American Family agreed to settle losses to the dwelling at replacement cost up to a maximum of 120 percent of the dwelling limit, and inflation protection coverage with respect to the dwelling and personal property, each as subject to the policy's provisions.

---

[1] According to the affidavit of a senior property claim adjustor, "People's Bank requested that there be $261,000 in dwelling coverage on April 10, 2008, and the policy was increased at that time to the limits shown in the Declarations." American Family Appendix at 517.

On December 19, 2008, a fire destroyed the Schweitzers' house. The Schweitzers reported the loss to Gholson, and a representative for American Family visited the location of the house and discussed with the Schweitzers the coverage limits of their policy. The Schweitzers submitted various claims, and American Family made several payments to them totaling $326,040, which American Family indicated was the limit of its policy for the dwelling.[2] American Family informed the Schweitzers that it would not be affording coverage for any damage to the driveway. American Family also received a claim on September 20, 2010, alleging that a theft of certain property occurred on January 28, 2009, and American Family initiated an investigation and requested statements from the Schweitzers, but Daryl informed American Family that his wife Lynn would not provide a statement.

On October 18, 2010, the Schweitzers filed a complaint against American Family and Gholson. As to American Family, they alleged that not all of the benefits due under the policy were paid and that the remaining benefits due included amounts for losses to or in connection with the structure, landscaping, pond, driveway, well and septic system, relocation, additional living expenses, and contents in the house beyond the policy limits improperly applied by American Family. The Schweitzers further claimed American Family unreasonably delayed certain payments and that they should be considered beneficiaries of a practice instituted by American Family requiring its agents to write

_____

[2] According to the affidavits of a property claims adjuster and a property claims manager, the initial coverage limit with respect to the dwelling of $261,000 was increased to $271,700 as a result of the provision providing for inflation protection coverage and that amount was increased to $326,040 pursuant to the increased building limit coverage. American Family designated evidence that it made payments for the dwelling of $326,040, personal property of $203,800, landscaping and debris removal of $13,585, housing expenses while the new house was completed of $28,112.11, and an antenna claim of $524.36.

policies for full replacement coverage. The Schweitzers also alleged that the total limit of structure coverage improperly utilized by American Family was $326,040, that the actual loss they sustained substantially exceeded that limit, and that American Family acted in bad faith, for which they requested punitive damages. As to Gholson, the Schweitzers asserted they totally relied upon the professional services and advice of Gholson and believed they had full and complete insurance coverage in the event of a total loss of their residence. The Schweitzers alleged Gholson was negligent in part for failing to follow a directive of American Family to issue full replacement cost policies to its insureds, failing to cause a policy to be issued with sufficient amounts of coverages to fully indemnify them against loss, and failing to make an adequate determination of the proper amount of coverages.

On August 6, 2012, Gholson filed a motion for summary judgment together with designated evidence and a brief in support of the motion. The same day, American Family filed a motion for summary judgment together with designated evidence, a brief in support of the motion, and a statement of undisputed facts. The Schweitzers filed designations of evidence and memoranda in opposition to the summary judgment motions. The court held a hearing on the motions on December 4, 2012.

On March 28, 2013, the court entered an order granting summary judgment in favor of Appellees and against the Schweitzers. The court found that, as a result of a meeting between the Schweitzers and Gholson, American Family issued a policy to the Schweitzers and that Daryl reviewed the amount of the coverage provided under the policy and did not disagree with the coverage limits or ever ask Gholson to increase the

4

amount of the coverage. The court also found that, following the loss of the house, American Family requested Lynn to provide a recorded statement pursuant to the terms of its policy and that Lynn never provided the statement. The court cited Filip v. Block, 879 N.E.2d 1079 (Ind. 2008), reh'g denied, and Myers v. Yoder, 921 N.E.2d 880 (Ind. Ct. App. 2010), and found that Gholson did not owe the Schweitzers the duty to tell them about the adequacy of their coverage or any alternative coverage that may be available and accordingly that the Schweitzers' claim against Gholson for negligent procurement of insurance must fail. The court further found that the designated evidence established that American Family made payment of all amounts due under the applicable coverage categories in the policy, and that American Family designated evidence, not rebutted by the Schweitzers, establishing that the Schweitzers' claim with respect to the alleged damage to their driveway was excluded from coverage. Finally, the court found that the Schweitzers breached the policy as a matter of law because Lynn never provided a recorded statement to American Family under the terms of the policy.

DISCUSSION

The issue is whether the trial court erred in entering summary judgment in favor of Appellees and against the Schweitzers. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Resources, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the

5

trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Comm'rs of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id. We review a summary judgment order *de novo*. Bules v. Marshall Cnty., 920 N.E.2d 247, 250 (Ind. 2010).

We discuss the Schweitzers' arguments related to Gholson and American Family separately.

A. Gholson

The Schweitzers assert that Gholson had a duty to exercise reasonable care, skill, and diligence in obtaining insurance for them, and that they did not identify the desired coverage, but relied solely on Gholson's expertise to obtain insurance which would protect them in case of loss and thus that "[t]he Filip opinion does not apply." Appellants' Brief at 19. They also contend that "[i]t should first be noted that the Schweitzers' claim against Gholson is not for its negligent failure to advise them about coverage," that their "claim is instead for Gholson's negligent failure to obtain adequate coverage to protect them in case of loss," and "[t]he 'special relationship' required in the Myers case is therefore not applicable in the present case." Id. at 20. They further argue

6

that, even assuming a special relationship is required to hold Gholson liable, they have designated evidence sufficient to show that a special relationship existed and that Gholson is not entitled to summary judgment on the issue of duty of care. The Schweitzers also claim that Gholson is a "captive" agent of American Family and as such had a duty to comply with a directive by American Family to provide full replacement cost to American Family's insured. Id. at 21.

Gholson maintains that insurance agents owe their customers a general duty of care and that, if a special relationship exists between the agent and the insured, the agent has a duty to advise. Gholson argues that, "[b]y claiming that [she] negligently failed to sell them a policy that covered the home's full replacement cost, the Schweitzers are trying to shoehorn a duty-to-advise argument into a general duty-of-care theory," and that "Indiana's courts have steadfastly refused to expand the general duty's scope in the typical insurer-insured relationship." Gholson's Brief at 5. Gholson contends that Indiana courts have repeatedly found that claims that an agent is obligated to identify an insured's desired coverage or advise the insured about alternative coverage "are really an effort to impose a duty to advise under the guise of the general duty of care." Id. at 7 (citing Filip, 879 N.E.2d at 1085). Gholson asserts that the Schweitzers cannot meet their burden of showing that an intimate, long-term relationship between the parties existed, that she was not the Schweitzers' regular insurance agent, and that the Schweitzers had not previously used her to obtain insurance and did not know her. Gholson argues that the Schweitzers' contact with her amounted to a general request for a homeowners policy, no particular type of insurance coverage was requested, she did not hold herself

7

out to be a highly skilled, one-of-a-kind insurance expert, and the Schweitzers did not pay her anything beyond the usual premiums for any specialized advice. Gholson further notes she made no specific representations that the policy provided full replacement cost coverage and that Daryl reviewed the policy after receiving it and knew his home had been appraised in 2003 and could have asked to increase his coverage and paid for the increased coverage but did not do so. Finally, Gholson argues that the court in Myers expressly rejected the notion that the general duty of care requires insurance agents to perform a replacement-cost estimate before issuing homeowners policies.

American Family adopted the reasoning and facts in Gholson's brief and further argues that Gholson was an independent contractor, not an agent of American Family, and that American Family could not be liable based upon the alleged negligent acts of Gholson. American Family also argues that the Schweitzers never provided it or Gholson any documents to establish that the value of the property exceeded the policy limits before the loss, that the Schweitzers were aware of the limits from the declarations page of the policy, and that the mortgagee was also aware of the limits, having asked American Family to increase the amount of coverage in April of 2008. American Family also maintains it did not institute a policy directing its agents to write full replacement cost policies for the type of policy purchased by the Schweitzers.

In Filip v. Block, the Indiana Supreme Court held: "Insurance agents potentially have both a general duty of care and a duty to advise their clients. Which duty governs in a particular case is a matter of law. The law in Indiana is settled: an insured must demonstrate some type of special relationship for a duty to advise to exist." 879 N.E.2d

8

at 1085 (citations and internal quotation marks and brackets omitted). In addressing the Filips' claims for failure to advise as to coverage, the Court noted that the Filips "do not argue that they are entitled to a determination of a special relationship, but seek to describe the duty of care broadly to include the obligation to 'identify the insured's desires with regard to insurance and explain to the insureds various coverages available to meet those desires,'" and that "[t]he Filips are essentially arguing the duty to advise under the guise of the general duty of care." Id.

In Myers, Donald and Sandra Myers claimed the appellees, the insurance agent Krueger and the insurance company, were negligent in failing to advise them about their homeowners insurance policy and specifically argued that a genuine issue of material fact existed as to whether the appellees breached their respective duties to provide adequate coverage to them. 921 N.E.2d at 882. This court observed that an insurance agent's duty "does not extend to providing advice to the insured unless the insured can establish the existence of an intimate, long-term relationship with the agent or some other special circumstance." Id. at 885 (citation omitted). "In other words, something more than the standard insurer-insured relationship is required to create a special relationship obligating the agent to advise the insured about coverage." Id. (citing Am. Family Mut. Ins. Co. v. Dye, 634 N.E.2d 844, 848 (Ind. Ct. App. 1994), reh'g denied, trans. denied). We further explained:

> Factors demonstrating the existence of a special relationship between the agent and insured include whether the agent: 1) exercised broad discretion in servicing the insured's needs; 2) counseled the insured concerning specialized insurance coverage; 3) held himself out as a highly-skilled insurance expert; or 4) received compensation for the expert advice

9

provided above the customary premium paid. While the question of whether the relationship gives rise to such a duty may involve questions of fact, whether an insurance agent owes the insured a duty to advise based on undisputed facts is a question of law for the court. The burden of establishing an intimate long-term relationship or other special circumstance is on the insured.

Id. at 885-886.

This court then found that the undisputed evidence demonstrated that no intimate, long-term relationship or other special relationship existed between Krueger and the Myerses. Id. at 887. In support of this conclusion, we observed that Krueger was not the Myerses' regular insurance agent and the Myerses had not previously used Krueger to obtain insurance for other matters. Id. We noted that no special circumstances were present that justified imposing a duty on the appellees to provide the Myerses with advice as to the amount of homeowners insurance coverage that was needed, the Myerses did not consult with Krueger regarding any special insurance needs, Krueger did not counsel the Myerses concerning any specialized insurance coverage, there was no evidence that Krueger held herself out as a highly-skilled insurance expert, and Krueger never advised the Myerses regarding the type or amount of insurance that should be obtained. Id. at 888. We then noted that, "[n]otwithstanding these circumstances, the Myerses assert that because Sandra requested 'full coverage' for the residence, a duty was imposed on the appellees to determine what she meant in making that statement." Id. We observed in part: "Moreover, we have recently determined that an insured's expectation of 'full coverage' is not enough to impose a duty on an agent to provide advice to an insured regarding the amount of coverage that should be purchased." Id. at 889 (citing Barnes v.

10

McCarty, 893 N.E.2d 325, 329 (Ind. Ct. App. 2008), trans. denied). As to the Myers's contention that the appellees acted unreasonably in issuing the homeowners policy without performing a replacement cost estimate, we found that, although couched in terms of what amounts to reasonable care when issuing an insurance policy, the Myerses' argument had been rejected by the Indiana Supreme Court in Filip as an attempt to impose a duty to advise under the guise of the general duty of care owed by an insurance agent. Id. at 889-890. We stated that Filip "establishes that insurers are not under a duty to perform such an estimate." Id. at 890.

In this case, the designated evidence reveals that a special relationship did not exist between Gholson and the Schweitzers. The designated evidence shows that Daryl performed some searches on the Internet for insurance covering the Schweitzers' home, automobiles, and rental properties, that he discussed coverage through American Family with his wife, and that the Schweitzers met with Gholson at their house. This was the first time Schweitzers and Gholson had business dealings with each other, and the Schweitzers did not know anything about Gholson or her qualifications or experience. The Schweitzers did not inform Gholson of the amounts of coverage they desired.

Gholson obtained an insurance policy from American Family with an effective date of January 18, 2008, and the declarations page of the policy set forth the coverage limit for the dwelling as well as the fact the policy included certain supplemental coverage.[3] The designated evidence shows that the Schweitzers received an appraisal in

---

[3] In their reply to American Family's summary judgment motion, the Schweitzers argued that American Family instituted a policy which directed its agents that "All HO-3 and FR-3 new business

11

2003 in connection with the refinancing of their home mortgage and were told at the time that "the house, the land, and all the buildings were $350,000," and thus the Schweitzers were aware of the approximate value of the house.[4] American Family Appendix at 557. The Schweitzers did not object or raise any concern regarding the limits of the policies and did not request to increase the amount of coverage.[5] Daryl believed the dwelling limit of the policy from American Family was about $267,000, did not know if this amount was higher or lower than his previous policy's limit, and did not know whether the amount was enough to replace the house.[6] While Gholson assisted the Schweitzers with obtaining a homeowners policy from American Family, there is no evidence that

must be written at 100% [] replacement cost, starting December 3, 2007." Appellants' Appendix at 73. The policy issued to the Schweitzers was an "HO-5 (IN) Ed. 6/94" policy. American Family Appendix at 165. The affidavit of a senior claim attorney for American Family in the record states that, pursuant to his personal knowledge and experience, American Family never issued a policy which directed agents as claimed by the Schweitzers and that, even if such a policy did exist, it would not have applied to the Schweitzers because they were issued an HO-5 policy.

[4] During his deposition, Daryl testified he had approximately 3.75 acres of land and, when asked about the number of outbuildings, answered that "[a]t the time there was a pole barn with an attached pool and deck and gazebo." American Family Appendix at 557. American Family designated a residential assessment from the Lake County Assessor which showed, as of March 1, 2007, a land valuation of $30,700, a building valuation of $173,700, and a total valuation of $204,400.

[5] During his deposition, when asked "[d]id you review the amounts," Daryl testified "I would suspect so." American Family Appendix at 556. When asked "[d]id you disagree with any of the values she had on the policies" and if he ever asked "to increase the amount of coverage," Daryl replied "[n]ot to my knowledge." Id.

[6] Daryl testified during his deposition that he was expecting coverage to replace his home. Earlier in his deposition, when asked whether, together with the 2003 appraisal he had received and the fact that he had a mortgage of "200-something thousand," he thought the amount of coverage was too low, Daryl testified "[w]ell, appraisal value would be what it's worth to sell, and that has no relationship with cost to rebuild." American Family Appendix at 557. Daryl further testified that American Family's property claim manager assigned to his claim informed him he could "build anything [he] want[ed] as long as it's one physical structure" and that American Family would pay only up to the policy's limit. Id. at 571. Daryl testified that the new house was "about thirty-two or three hundred square foot versus just under 2,000 [for the old house]" and that there were various other differences between the houses, such as an attached three-bay garage and a larger master bedroom suite in the new house. Id. He later testified that the original house had been built in two stages, the basement in 1952 and the upstairs around 1957.

Gholson exercised broad discretion in servicing the Schweitzers insurance needs, that the Schweitzers relied on Gholson for expert advice as to insurance coverage or that she counseled them concerning specialized coverage, that Gholson held herself out as a highly-skilled insurance expert, or that she received any compensation above that associated with the customary premium paid.

Based upon the record, we find the circumstances do not constitute a special relationship between Gholson and the Schweitzers and no special circumstances exist which would give rise to a duty to advise. Accordingly, Gholson was under no duty to advise the Schweitzers about the adequacy of the coverage or any alternative coverage which may have been available, and Gholson did not breach her general duty. See Myers, 921 N.E.2d at 882-890. Further, Gholson was under no duty to provide a replacement cost estimate, and an expectation of full replacement coverage does not in itself impose a duty on an agent to provide advice to an insured regarding the amount of coverage that should be purchased. Id. at 889. The trial court did not err in granting summary judgment in favor of Gholson.

B.    American Family

The Schweitzers also assert there are genuine issues of material fact precluding summary judgment in favor of American Family. Specifically, they claim that American Family was in material breach of the insurance policy which excused further performance by Lynn in providing a requested statement and that American Family caused unfounded delays and refused to pay certain benefits due under the policy, including sums for actual cash value payments, driveway losses, theft losses, additional living expenses losses,

13

debris removal, and losses to antennas. American Family maintains that it fulfilled its obligations under the terms of the policy, it paid the entire policy limits for the dwelling, personal property, debris removal and landscaping coverage, it paid all of the additional living expenses owed under the policy, there was no delay of payments, the driveway was not a covered loss, the Schweitzers breached their duties as to the theft loss, and that the Schweitzers are not entitled to the replacement cost of an antenna as claimed.

American Family designated evidence that it made payments in the amounts of the coverage limits with respect to the dwelling of $326,040, personal property of $203,800, and landscaping and debris removal of $13,585. The designated evidence also shows American Family made payments for housing expenses while the Schweitzers' new house was completed of $28,112.11 and for an antenna claim of $524.36. With respect to debris removal, the homeowners policy included supplemental coverage for reasonable expenses incurred to remove debris of covered property following a covered loss, if the damage to that property and the cost of the debris removal was more than the limit for the property, in an amount up to an additional five percent of the limit for that property. American Family made payment to the Schweitzers of $13,585, the amount of the limit under the policy.[7] The Schweitzers' argument that they were entitled to payment for debris removal as calculated based on the full replacement cost of the dwelling is not persuasive as they were paid the amount due under the policy.

With respect to their antenna claim, the Schweitzers did not complete the replacement of the antenna within one year of the date of loss as required by the policy in

---

[7] Five percent of $271,000 is $13,585.

14

order to receive replacement coverage, and as a result were not entitled to the full replacement cost claimed of $631.75. American Family paid the Schweitzers the actual cash value of the antenna of $524.36. The Schweitzers do not point to designated evidence suggesting they were prevented from replacing or were otherwise not required under the policy to replace the antenna within one year of the date of loss due to the fact they lived in temporary housing or had cable service during that time, and they are not entitled to additional payments.

The Schweitzers also argue they were entitled to additional housing expenses, namely, additional payments related to increased mileage. In support of their argument, the Schweitzers point to a letter they received from an adjuster which provided in part:

> Mileage, I will accept the mileage for April 2010 since I know you were moving to the rental house. The mileage for May, June, July, August, September, October and November is excessive. The rental house is 2 miles closer to school with bus service if necessary. If you were going to the house to do work that is your choice since you hired a general contractor to do the rebuilding. If you want [American Family] to consider the extra mileage I need a written log as to what this mileage was used for and why.

American Family Appendix at 409. The Schweitzers do not point to designated evidence showing they are entitled to additional payments for mileage during the time their house was rebuilt.

With respect to the Schweitzers' argument that American Family made an unfounded refusal to pay for damage to their driveway, the designated evidence shows that American Family informed the Schweitzers that it had hired an engineer to inspect the driveway to determine if the damages were related to the equipment used to

15

extinguish the fire, that the opinion of the engineer stated in part that the fire truck did not damage the driveway and the driveway was in poor condition with evidence of past repairs in the rutted areas, and that, based upon the finding of the engineer and the policy exclusions, American Family would not be affording coverage for any damage to the driveway. American Family referenced the policy's language stating that the policy did not cover loss resulting from, among certain other causes, wear and tear or deterioration. American Family also noted the policy's language providing in part that the policy did not cover loss resulting from faulty, inadequate, or defective construction, repair, or materials used in construction, design, workmanship or specifications, grading or compaction, or maintenance. The engineer's report, in the analysis and conclusions section, provided in part that "[i]t was reported that the fire truck parked in the driveway northeast of the house; therefore none of the damages from that point south to the detached garage were caused by the fire truck." Id. at 441. The report further provided that the driveway "is generally in poor condition with alligator cracking and breakup of the asphalt surface," that "[t]he condition is caused by insufficient base material and/or wet poorly drained material," that "[t]he cracking itself is caused by freeze-thaw cycles," and that "[t]raffic will then knock the material loose and if the base is soft, rutting occurs or if the ground is frozen and surface water is present, potholes form." Id. The report also provided that "[t]he fire occurred in December when the ground was frozen [when] the driveway would be stronger than when it thaws and is wet and soft" and "[i]t is unlikely that the fire truck would damage the driveway at that time even in its poor

16

condition." Id. at 442. The designated evidence supports the entry of summary judgment in favor of American Family with respect to the driveway.

With respect to the Schweitzers' claim that they incurred a theft loss, a property claim field manager for American Family stated in his affidavit that an e-mail message had been sent from the American Family claim call center to Gholson on September 20, 2010, noting that the Schweitzers had reported a loss. The field manager stated that the date of loss was reported as January 28, 2009, and that the Schweitzers alleged they "came home and discovered outdoors bathroom door lock was broken and door was kicked in at back entrance to garage" and "[d]iscovered items stolen, then discovered a lawn and garden tractor missing." Id. at 506. According to the field manager's affidavit, a representative of American Family met with Daryl at the loss location, took photographs, and asked about the location of the equipment and tools when they were stolen. The field manager stated that Daryl "stated the garage door had been repaired so there were no signs of forced entry." Id. at 507. The field manager's affidavit stated that the representative advised Daryl that "he needed to arrange an in person interview with he [sic] and his wife in regard to the claim file" and that Daryl "stated his wife does not know anything and she does not know what was missing so did not understand why they needed a statement." Id.

The field manager's affidavit further stated that the "theft loss raised several issues for investigation," including "whether any of the items claimed taken in the theft loss were also claimed in the fire loss," the "reason for the late notice to American Family for making the theft claim," the "fact that initially Mr. Schweitzer claimed only tools were

taken . . . but now he claimed a tractor was missing," the "actual date of loss," whether "any of the tools were used for business purposes," the "age, condition and description of the tractor which was allegedly taken," and "whether the Schweitzers were neglectful in protecting and preserving the property after the fire loss." Id. The field manager's affidavit stated that "[t]o address each of these issues, I needed statements from the named insureds." Id. The affidavit stated that on October 8, 2010, Daryl "stated his wife declined a statement," that he wanted "a copy of the first statement he gave before he gives a statement," and that "he will not give a recorded interview unless he receives a transcribed copy of the statements given to the call center and prior adjustor." Id. at 507-508. The field manager's affidavit stated that Daryl was advised that he was "still under investigation [and American Family] will not release any statements until the investigation is complete." Id. at 508.

Finally, the affidavit stated that, on October 14, 2010, American Family sent a letter to the Schweitzers requesting their cooperation with the current investigation, citing the relevant provisions of the policy, and that "[e]ven though coverage questions exist, American Family will continue to investigate this claim." Id. Prior to filing the lawsuit, Lynn never provided a statement with respect to the claim as requested. The policy included provisions which required all insureds, as reasonably required by American Family, to provide records and documents as requested and to "let [American Family] record [the insureds] statements and submit to examinations under oath . . . , while not in the presence of any other insured, and sign the transcript of the statements and

18

examinations." Id. at 174. The trial court properly entered summary judgment in favor of American Family with respect to this claim.

The Schweitzers also argue American Family unduly delayed payment because the loss occurred on January 9, 2009, and they did not receive any actual cash value payment until March 31, 2009, over sixty days after the date of loss. However, the policy did not require American Family to make any payment within sixty days of the date of loss but rather provided that payment would be made within sixty days after American Family received the insured's "properly completed proof of loss and: a. we reach agreement with you; b. there is an entry of a final judgment; or c. there is a filing of an arbitration award with [American Family]." Id. at 173. The designated evidence does not show that there was a completed proof of loss and an agreement between American Family and the Schweitzers on the day of the fire or loss, and American Family did not fail to comply with the payment provision above on this basis. Schweitzers received proceeds of the coverage limit for the dwelling under the policy. To the extent the Schweitzers claimed punitive damages and based the claim in part upon the timing of payment by American Family, the designated evidence does not present a genuine issue of material fact regarding whether American Family acted in good faith, and entry of summary judgment in favor of American Family on this issue was proper.

Based upon the designated evidence set forth above and in the record, we find the Schweitzers are not entitled to additional payments under their homeowners insurance policy and that the trial court did not err in granting summary judgment in favor of American Family.

19

CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Appellees.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.